No. 29,490.

TOBY HINSHAW, IDA M. HULL, MARY HINSHAW, NAROLA HOUCHIN, DEAN HINSHAW and GEORGE HINSHAW, *Appellees*, v. WESLEY M. SMITH (B. E. BROWN, FRED WHITE, DEE DOOLEY, CHARLES YOUNGER, GEORGE CARMACK, W. H. ILIFF and J. H. BOSWELL), *Appellant.*

(291 Pac. 774.)

Opinion filed October 11, 1930.

*Al F. Williams, Don H. Elleman,* both of Columbus, *Dyke Ballinger* and *Bryce Ballinger*, both of Miami, Okla., for the appellant.

*F. W. Boss,* of Columbus, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal is from a judgment rendered by the district court of Cherokee county in favor of the plaintiffs as owners of an eighty-acre tract of land in that county, forfeiting and canceling a mining lease held on the land by the defendant and quieting the title of the plaintiffs to such land, and enjoining the defendant, his agents, servants and employees from going upon the real estate and conducting drilling or mining operations thereon,

and from mining or removing minerals or ores therefrom. Many parties were made defendants, and judgment was rendered by default against all of them, but on application of only one of them, Wesley M. Smith, the judgment was opened up as to him and he was let in to defend. The issues formed by the filing of his answer were tried out and the appeal is from this judgment rendered against him.

The lease in question was made by the owners to one B. E. Brown on May 17, 1922, and was assigned to this defendant, Wesley M. Smith, on April 28, 1926. The petition alleges as grounds for the forfeiture of the lease, under the terms thereof, that the defendant Smith failed to work the premises by drilling continuously, and that the drilling and prospecting that were done were not continuous or in good faith as required by the lease. The failures and neglects, if any, of the original lessee, will not at this time concern us because the appellant will only be held accountable for his own operations or failures on the premises after the assignment of the lease to him. It is admitted that he went into possession immediately after the assignment to him and was in possession when this action was filed October 2, 1928, a period of two years and five months.

A preliminary notice of forfeiture was mailed to appellant shortly before the filing of this action. The defense was first a substantial compliance in good faith with the requirements of the lease, and, second, if appellant was guilty of a failure to comply with the terms and conditions of the lease in any particular, that such acts were waived by the appellees by their acceptance of royalties and benefits accruing under the terms of the lease and by their laches in not acting promptly upon the ascertainment of such violations.

The first question here involved is one of fact: Was there a substantial compliance in good faith with the requirements of the lease by continuous drilling and prospecting by the appellant during his two years and five months of possession? The trial court held there was not, and our duty on appeal is to determine from the record if there is sufficient evidence to sustain the general finding of the trial court in this particular.

The following paragraphs of the lease contain the drilling requirements and the grounds for forfeiture:

"2. Said party of the second part shall commence work upon said land within sixty (60) days from the date hereof and shall work the same by drilling continuously after having once commenced said drilling, drilling the entire tracts of land in twenty (20) acre tracts. As soon as one twenty-acre

tract is drilled out and no ore is discovered upon the same in paying quantities, then said twenty-acre tract shall revert to the party of the first part; after said party of the second part, his successors or assigns are satisfied that there is no ore upon said tract of land by such continuous drilling, then said party of the second part shall proceed to drill a second and further twenty-acre tract in the same manner as above set forth and under the same terms and conditions of drilling and relinquishment, until the entire tract of land above described has been prospected by drilling.

"18. Any failure to comply with and perform any of the terms and requirements of this lease in good faith at any time shall end and determine (terminate) the same, and the party of the first part may declare an ouster and reënter upon and hold said demised premises without notice."

Before the appellant went into possession of the lease seven holes had been drilled and one shaft sunk on the east end of the eighty-acre tract. The appellant during the two years and five months he was in possession drilled eighteen holes and sunk a shaft on the west end of the tract, and did something more than six or seven hundred feet of drifting in the two shafts.

Seventeen of the eighteen holes drilled by appellant were drilled between April, 1926, and sometime in August following, a period of about four months. There was no more drilling done from the surface until October or November, 1927, a period of about fourteen or fifteen months; then the eighteenth hole was drilled, and no further drilling from the surface had been done when this action was commenced about ten or eleven months later. During these two long intervals when no drilling was being done the shaft on the west end was sunk and the drifting was accomplished. The record shows the time required for the drilling of eight of these eighteen holes was from three to ten days on each, or a total of not more than six months. From the testimony it would appear the shaft sinking was accomplished in approximately two months, and the testimony shows five and one-half feet, a low average, for a day's drifting, at which rate the entire drifting could have been accomplished in less than five months—all of which items make a total of about thirteen months' time required to accomplish what was done by appellant during the twenty-nine months he had possession of the premises. There is no special conflict as to the facts and figures above stated, but there is a confusion and apparent conflict as to the regularity and continuity of the work done in the shafts, called drifting. Those having stock on the premises and farming it testified there would be periods from ten to sixty days,

and at other times from two to four months, that no one would be seen at work drilling or prospecting on the lease. There was other testimony to the effect that the work was practically continuous with only temporary interruptions for business and justifiable reasons.

There was evidence showing a regular pay roll for certain periods, and the vast expense incurred in performing the work that was accomplished, the amount of ore extracted and sold with the ten per cent deposited from time to time to the credit of the appellees. All agree there was no discovery in paying quantities, and the appellant said he was not yet ready to release any of the twenty-acre tracts included in the lease.

We have no hesitancy in agreeing with the trial court in its general finding that there was not a substantial compliance with the requirements of the lease by drilling and prospecting continuously and in good faith.

There were other allegations, and some proof, as to failure of appellant along other lines, concerning methods, tools and machinery used in operating the mines, and failure to construct mills to properly care for the ore produced; but it is not necessary to consider any of it since we concur with the court as to one of the failures alleged. Besides, most of the other matters were requirements only when mineral was discovered in paying quantities, which has not been done.

But the further defense of the appellant was that, even if he was guilty of failure to comply with the terms and conditions of the lease in any particular, that such acts were waived by the appellees by their action and by their acceptance of royalties and benefits accruing under the lease, and that they are estopped from asserting a forfeiture by reason thereof.

The lease provided for the payment of ten per cent royalty upon all ores mined and taken from the land, the royalty to be paid to the account of Ezra Hinshaw, the original trustee for plaintiffs, at the Baxter National Bank, of Baxter Springs, Kan. It was stipulated that the total sum of $460 had been deposited by appellant in that bank to the credit of the appellees during the existence of his lease as and for such royalties, and that of that sum $13.49 was deposited October 9, 1928, for settlement made September 15, 1928, and $7.01 deposited December 5, 1928, for settlement made Novem-

ber 6, 1928, both of which were made after the giving of the notice of forfeiture and the commencement of this suit.

Mr. Toby Hinshaw, representing the appellees, testified he had given the bank notice in August, 1928, not to accept any more deposits from the appellant for royalty, and that he had no knowledge or notice of the last two payments having been made until long after this action had been brought. It is conceded that the giving of notice to the bank not to accept any more deposits did not bind the appellant. The lease made the bank the agent of the landowners, and the appellant had a perfect right to continue to make deposits there until directly notified otherwise; but the question is, Does the acceptance of such deposits by the bank waive the right of the appellees to insist upon a forfeiture for the failure of the appellant to meet the requirements of the lease as to continuous drilling and prospecting? It is further conceded that if the failure complained of were in connection with the payment of rents or royalties, the payment to the agent would be a waiver. But here the failure relied upon by the landowners for the forfeiture is a continuing one, viz., the failure of continuously drilling and prospecting. The payment of the royalty did not relieve that situation. Many of the authorities cited are in cases where the payment of rents or royalties constituted the breach complained of, or in cases where time was made the essence of the contract. The citation by appellant of 16 R. C. L. 1132 specifically notes this distinction in section 657.

"Thus, where a mining lease provides for its forfeiture for cessation of work for a specified time, the acceptance of rent after cessation for such time will not preclude the enforcement of a forfeiture for a continued cessation." (p. 1136.)

The case of *Big Six Development Co. v. Mitchell,* 138 Fed. 279, decided in the circuit court of appeals, was one almost identical with the case at bar, and it was there held:

"It is also urged that after the notice of forfeiture, and on the 5th day of October, 1903, the plaintiff received and accepted the rents or royalties due under the lease, and that this act upon his part constituted a waiver of the forfeiture. The ground of forfeiture, as we understand the record, was the continued failure of the defendant to mine in a workmanlike manner, and to support the ground so that it would not cave, and the defendant's violation of these covenants of the lease continued up to the time the temporary injunction was issued. We think the receipt of the rent or royalty was not a waiver of the forfeiture." (p. 284.)

Closely allied with the claim of waiver is the further claim of estoppel. Two essential elements of estoppel are wholly lacking in this case: inducement and prejudice. What did the appellees do in this case to induce the appellant to commit the continuing breach, and how was appellant prejudiced by what they did or failed to do? It is said appellees stood silently by and did not urge appellant to comply with his contract. The evidence shows frequent starts at the drifting work and one new start at drilling after many months cessation. It was certainly leniency on the part of the appellees, but the visits and request for logs of the holes drilled were sufficient to show anyone that appellees were not intending to stand silently by. The appellant was in no way prejudiced by the attitude of the appellees. All that he did was done under the terms of the lease. His failure consisted in not doing more of the only kind of work he had done.

The necessary elements of estoppel are entirely wanting here.

"So-called constructive fraud, however, is not only sufficient but lies beneath every equitable estoppel; that is, the person estopped is considered as having by his admissions, declarations, or conduct, misled another to his prejudice, so that it would work a fraud to allow the true state of facts to be proved." (10 R. C. L. 691.)

In the same connection we are reminded by appellant that forfeitures are abhorred by the law, but that does not apply when parties deliberately bind themselves by the terms of a contract capable of being fulfilled. In the case of *Gasaway v. Teichgraeber*, 107 Kan. 340, 191 Pac. 282, which was an action to forfeit a lease where the operator had contracted to commence the drilling of an oil well on the land in question or pay one dollar per acre before April 17, and he did nothing as to drilling the well, but attempted to pay the dollar per acre on April 18, the court said:

"While forfeitures are abhorred by the law, this is not strictly a forfeiture, but a mere holding of a party to the contract it has made. There was no need of delaying the payment, and the failure to remit in time was not chargeable to the plaintiffs, and the delay left the defendant in the attitude of calling on the plaintiffs to make or recognize a different contract from the one the parties had voluntarily made." (p. 341.)

The same view was expressed in *Doornbos v. Warwick*, 104 Kan. 102, 177 Pac. 527, where the lessee had the alternative of drilling or paying rent before a definite date. He did neither, and the court held "the lease became null and void and subject to forfeiture."

The law does not abhor the fulfilling of contracts where parties have bound themselves to certain definite requirements or the loss of the lease in unambiguous terms.

The third assignment of error concerns the admission of testimony over the objection of the appellant, but the evidence is not considered by this court as in any way binding upon the appellant, and it certainly could not have influenced the trial court because of the statement of the court to the same effect at the time the evidence was admitted.

The judgment is affirmed.