No. 47,790

LUTHER WASHINGTON, *Appellee,* v. LOUIS A. CLAASSEN and ALBERT CHANEY, *Appellants.*

(545 P. 2d 387)

Opinion filed January 24, 1976.

*Otto J. Koerner* and *Randall H. Elam,* both of Wichita, argued the cause and were on the brief for appellants.

No appearance by appellee.

The opinion of the court was delivered by

FROMME, J.: The plaintiff, Luther Washington, brought an action to recover for services rendered and materials used in remodeling and repairing a house in Wichita, Kansas. A judgment for $1,000.00 was entered against the defendants, Louis A. Claassen

(owner of the house) and Albert Chaney (real estate agent) after a trial to the court. The defendants appeal.

The house, located at 1515 North Poplar, was in poor condition. Claassen employed Chaney to oversee renovation and repair of this house and to secure a sale of the premises when the repair work had been completed. The actual renovation and repair was done by J. T. Washington, brother of the plaintiff. He was paid the sum of $4,100.00 for services and materials. During the time this work was being done the plaintiff, Luther Washington, either on his own initiative or because of an offer of sale by Chaney, expressed an interest in buying the house. The price discussed between plaintiff and Chaney was $8,500.00. Plaintiff had no cash down payment and it was agreed that plaintiff could assist his brother in the repair of the house. The value of his work was to be treated as a down payment for the property if he could get a loan for the balance. Plaintiff testified he worked about 80 hours before the repair job was completed and his wages came to $180.00. When the work was completed plaintiff was unable to secure a loan on the house. For this reason Chaney agreed to allow plaintiff to move into the house and pay rent of $80.00 per month until plaintiff could obtain a loan.

Plaintiff took possession of the property in March, 1970, and paid rent until July, 1972, at which time he vacated the property. The owner thereafter paid $309.00 to repair damages to the house caused by Luther Washington during his occupancy. During the period plaintiff was in possession of the house he expressed a desire to remodel the basement of the house by putting in an open stairway to the basement, partitioning the area to complete a bathroom, two bedrooms and a recreation room for his children. Chaney agreed and it was understood the cost of the work and materials could be used by plaintiff as an equity or in lieu of a cash down payment for the purpose of obtaining a loan for the purchase price of $8,500.00. The repair work previously furnished by plaintiff in the sum of $180.00 was to be included as part of his equity in case of purchase.

All discussions regarding the remodeling and the sale of the property were between Chaney and the plaintiff. The owner, Claassen, was unaware of these matters. In June, 1972, when the remodeling was complete, it appeared to Chaney that plaintiff could obtain a loan on the premises for $8,500.00 using a $1,500.00 credit for plaintiff's equity in the premises. The agent Chaney

prepared a written contract of sale which showed a sale price of $10,000.00, a credit of $1,500.00, and a balance due Claassen of $8,500.00 to be raised by loan. This written contract was signed by Claassen, as seller, Chaney as agent for the seller, and Luther Washington and wife, as purchasers. From the record it appears that all parties agreed to this written contract and their signatures were affixed thereto. No fraud or undue influence is alleged or claimed by plaintiff.

After the written contract was drawn and signed, Chaney arranged with a lending agency to process the $8,500.00 loan on the house. He then delivered the written contracts to the plaintiff who took the contracts to the lending agency. The plaintiff testified that when he arrived at the lending agency and learned of the amount of the monthly payment required to carry the loan he then read the contract for the first time. The price was to be $8,500.00, but he understood that a credit of $1,500.00 would be given, and he assumed the balance to be paid by loan installments would be $7,000.00. The monthly payments required to carry the $8,500.00 loan ran from $90.00 to $93.00. This was more than he would pay. Plaintiff refused to sign the loan papers. He left the copies of the signed contract with the lending agency and left. The copies of the written contract were lost or inadvertently destroyed by the loan company. Thereafter plaintiff moved out of the house and filed this action to recover for labor and materials in remodeling the house. Trial was to the court. Judgment was entered for $1,000.00, $700.00 for labor and $300.00 for materials.

On appeal defendants contend that the trial court's findings are not supported by the evidence and that its conclusions are erroneous. The defendants' arguments are persuasive.

The defendants contend the trial court erroneously found that no written enforceable contract was entered into. The evidence introduced to show the existence and general terms of the written contract was uncontroverted. All parties testified at the trial that the contract in writing was signed by all parties and that they understood that the defendant Claassen was to receive $8,500.00 as the purchase price of the property.

The plaintiff testified that he did not intend to agree to the terms of the written contract, that he was unaware of the contents at the time he signed it and that he repudiated the contract as soon as he learned of its effect. On the basis of this evidence the trial court found:

"3. The contract was never executed because the price at the time of the closing was not the same as the price at the time the premises were occupied by plaintiff."

It concluded on the basis of such finding:

"1. The oral contract to purchase the real estate is not enforceable by reason of the Statute of Frauds."

When a written memorandum required by the statute of frauds is lost or inadvertently destroyed, its contents may be proved by oral testimony which discloses the contents of the writing and the fact that it was signed by the parties. (72 Am. Jur. 2d, Statute of Frauds, § 288, p. 807; 37 C. J. S., Frauds, Statute of, § 281, pp. 809, 810; 1 Restatement of Contracts, § 216, p. 291.) It was conceded by all parties that the written contract was prepared and signed. It was further conceded that the contract of sale in this case covered the house in question, recited a total sale price of $10,000.00 with a $1,500.00 credit received and a balance to be paid by the loan of $8,500.00.

In *Sutherland v. Sutherland,* 187 Kan. 599, 358 P. 2d 776, this court holds:

"The general rule is that a contracting party is bound by an agreement to which he assents, where the assent is uninfluenced by fraud, violence, undue influence, or the like, and he will not be permitted to say he did not intend to agree to its terms. A contracting party is under a duty to learn the contents of a written contract before signing it, and if, without being a victim of fraud, he fails to read the contract or otherwise to learn its contents, he signs the same at his peril and is estopped to deny his obligations thereunder. (*Maltby v. Sumner,* 169 Kan. 417, 219 P. 2d 395, and authorities cited therein.) If a person cannot read an instrument, it is as much his duty to procure some reliable person to read and explain it, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents. (*Maltby v. Sumner,* supra.)" (p. 610.)

When a person signs a written contract he is bound by its terms, in the absence of fraud, undue influence or mutual mistake as to its contents, regardless of the person's failure to read and understand its terms. (See *Lumbar v. Erickson,* 126 Kan. 31, 266 Pac. 737.)

No fraud or misrepresentation was alleged by plaintiff in his pleadings and no testimony at the trial would support such an allegation. He testified he failed and neglected to read the contract at the time it was signed. He did not testify that he was unable or lacked an opportunity to read the contract at that time.

Under the foregoing rules the trial court in this case was obliged to find that the written contract for the purchase of the property was prepared and entered into by the parties.

The cases cited by the trial court in reaching its conclusion granting plaintiff damages are inapplicable to the facts of this case. Those cases proceed upon the theory of unjust enrichment. The underlying theory of unjust enrichment is that where one expends money and labor in the improvement of the property of another on the faith of a contract which is unenforceable under the statute of frauds or for other reasons, he is entitled to be reimbursed for the improvements enhancing the value of the property on repudiation of the contract by the seller. (See *Dunn v. Winans,* 106 Kan. 80, 186 Pac. 748; *Baldridge v. Centgraf,* 82 Kan. 240, 108 Pac. 83; *Deisher v. Stein,* 34 Kan. 39, 7 Pac. 608; *Lister v. Batson,* 6 Kan. 420.)

The present case is distinguishable. Here an enforceable contract existed which was repudiated by the purchaser, not by the seller of the property. Ordinarily a purchaser in default on his contract cannot maintain an action to recover the value of improvements placed on the land while he was in possession. (92 C. J. S., Vendor and Purchaser, § 544, p. 542, and 77 Am. Jur. 2d, Vendor and Purchaser, § 600, pp. 730, 731.)

Unjust enrichment is measured by the enhancement in value of real property which occurs by virtue of improvements placed by one on property of another and is usually the difference between the value of the land with and without the improvements at the time of dispossession or the cost of the improvements whichever is less. (*Madrid v. Spears,* 250 F. 2d 51 [10th Cir. 1957]; *Attebery v. Prentice,* 158 Neb. 795, 65 N. W. 2d 138; and *Hooks v. Brown,* 348 S. W. 2d 104 [Tex. Civ. App. 1961].)

It is clear from the record in this case that the lower court made no attempt to determine the enhancement in value of the property by virtue of the improvements made by the plaintiff. In fact, evidence received at the trial indicates that the value of the property was not enhanced by the improvements. Under the rule previously announced plaintiff cannot recover the cost of labor and materials expended if the value of the property is not increased thereby.

In the present case the defendant owner of the property did not repudiate the contract for sale but stood ready to perform. In an analogous situation it has been held that a purchaser in default

may recover payments made in part performance on a contract for the sale if he can show the extent to which his payments exceed the injury caused by the breach. No recovery for partial performance is allowed, however, where the vendor remains able and willing to perform his part of the contract. (See 2 Restatement of Contracts, § 357, comment on subsection [1] [b], p. 625; 5A Corbin on Contracts, § 1130, pp. 51-52.)

We have examined the record in the present case and find testimony that the remodeling of the basement did not enhance the value of the property. The plaintiff introduced no evidence to show an increase in value. Accordingly the judgment of the trial court is reversed and the case is remanded with directions to enter judgment in favor of the defendants.

SCHROEDER, J., concurring.