**L. R. FOY CONSTRUCTION CO., INC., Plaintiff,**

v.

**DEAN L. DAULEY AND WALDORF ASSOCIATES, a Texas Limited Partnership, by Walters Investments, a Texas Limited Partnership, General Partner, Defendants.**

Civ. A. No. 82–1599.

United States District Court, D. Kansas.

Sept. 21, 1982.

---

* *Rock Island Railroad v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920).

defendants. Plaintiff filed an application to compel arbitration in the District Court of Reno County, Kansas. Defendants removed the case to this court, with removal jurisdiction based upon diversity. An evidentiary hearing was held on August 3, 1982, and after considering the testimony, exhibits and briefs, the Court is prepared to rule.

## FINDINGS OF FACT

Plaintiff and defendants entered into three contracts in which plaintiff was to build K-Mart Stores for defendants in Mayfield, Kentucky, Artesia, New Mexico, and Las Vegas, New Mexico. The contract for the Mayfield store was dated October 3, 1978. The contract for the Artesia store was dated February 21, 1979. The contract for the Las Vegas, New Mexico store was dated May 4, 1979.

Plaintiff filed demands for arbitration with the American Arbitration Association (hereinafter AAA), in disputes concerning all three contracts. The AAA consolidated the three cases and scheduled arbitration hearings in Hutchinson, Kansas, for July 26 and 27, 1982. On July 8, 1982, plaintiff filed its action to compel in state court, and on July 21st, the defendants removed the case to this court. On July 23, 1982, this Court entered an order to stay the arbitration hearings until he could determine whether the parties agreed to arbitration and, if so, if such agreements were enforceable.

Defendants admit that the Artesia and Mayfield contracts provide for arbitration, but deny that this Court has jurisdiction to compel arbitration. Defendants deny that the Las Vegas contract contains any agreement to arbitrate.

It is clear to the Court that there was no agreement to arbitrate in the Las Vegas contract. This contract, as do the other two, consists of two parts. Both parts are on forms published by the American Institute of Architects. The short first section is numbered A101, and contains the major provisions of the contract, such as descrip-

Kent G. Voth, Schmidt & Langley, Hutchinson, Kan., for plaintiff.

William P. Tretbar, Fleeson Gooing Coulson & Kitch, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This is an action to compel arbitration of disputes concerning three construction contracts entered into between plaintiff and

tion and location of the work, time of commencement and completion, contract sum, and time and method of payments. A101 incorporates the provisions of a second, longer form, number A201, which contains numerous "General Conditions."

In the Mayfield and Artesia contracts, defendants sent to plaintiff an original and five copies of the completed A101 form for signature. The A201 forms, which were incorporated, were not sent along. Plaintiff signed the originals and copies of the A101 portions of these two contracts and returned them to defendants, who then signed them.

Between the time these contracts were entered into and the time of the Las Vegas contract, defendants received legal advice concerning the standard forms used in these contracts. On the advice of counsel, defendants made a number of changes in the A201 form. Such changes were in the form of deletions of certain of the conditions in A201. In the A201 form attached to the A101 form in the Las Vegas contract, such deletions were made either by typewritten x's or by hand-drawn x's over the unwanted provisions. When defendants sent the proposed contract for the Las Vegas store to plaintiff for signature, defendants attached the A201 form which contained the deletions. The arbitration clause was among the clauses deleted. Plaintiff signed the A101 original and copies, which incorporated the attached A201, and returned them to defendants, who then signed the original and copies.

Plaintiff's representative, the vice-president of L. R. Foy Construction Co., Inc., testified that he did not read the A201 form before signing the A101, but merely opened it to one place in the general conditions because of a reference to the word "architect" in Article 7 of the A101 portion. The Court finds that plaintiff failed to give even a cursory examination to the A201 portion, which examination would have alerted plaintiff to the numerous and prominent deletions in A201. The Court finds that such failure to examine was not due to any misleading actions on the part of de-fendants, but was solely due to the carelessness of plaintiff's vice-president. The fact that defendants attached the A201 form, when it had not been attached in the previous contracts, should have been an extra caution to plaintiff's representative, who failed utterly in his simple duty to examine the contract into which his company was entering.

Plaintiff contends that any changes in A201 had to be listed under Article 7 of the A101 form for such changes to be valid. A reading of Article 7 dispels this notion, as there is no language in Article 7 which could support this argument.

In sum, the contract entered into by plaintiff and defendants for the Las Vegas store contained no provision for arbitration.

The two contracts which contain arbitration clauses provide for arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. No specific sites for arbitration are mentioned in the contract itself. The Construction Industry Arbitration Rules, however, provide for the fixing of locale in the following manner:

> "The parties may mutually agree on the locale where the arbitration is to be held. If any party requests that the hearing be held in a specific locale and the other party files no objection thereto within seven days after notice is mailed to such party, the locale shall be the one requested. If a party objects to the locale requested by the other party, the AAA shall have power to determine the locale and its decision shall be final and binding."

The above findings are based on the totality of the evidence, taking into consideration the credibility of the witnesses.

## CONCLUSIONS OF LAW

No arbitration clause exists in the Las Vegas contract. The failure of plaintiff to note the deleted arbitration provisions does not invalidate such deletions. When plaintiff, in the absence of fraud, undue influence, or mutual mistake, signs

the contract, he is bound by its terms, regardless of his failure to read the contract. E.g., *Washington v. Claassen,* 218 Kan. 577, 545 P.2d 387 (1976).

▇ The remaining two contracts contain valid arbitration clauses. Defendants contend, however, that this Court is without jurisdiction to compel arbitration. When a case is removed to this Court, this Court's jurisdiction is based on the jurisdiction of the state court. The Court will thus examine the question of whether the state court would have the jurisdiction and authority to compel arbitration in this matter.

The Court's jurisdiction is based on the Uniform Arbitration Act, which has been adopted by Kansas with minor changes and codified at K.S.A. § 5–401, et seq. Defendants admit that the arbitration agreements in the Mayfield and Artesia contracts are valid under the test promulgated in § 5–401, but deny that this Court has jurisdiction to compel arbitration. The key statutory provision is K.S.A. § 5–416, which reads:

> "The term 'court' or 'court of competent jurisdiction' means district court. The making of an agreement described in K.S.A. 5–401, providing for arbitration in this state, confers jurisdiction on the district court to enforce the agreement under this act and to enter judgment on an award thereunder."

Defendants focus on the words "providing for arbitration in this state." Defendants point out that the Artesia and Mayfield contracts contain no mention of Kansas as the location for arbitration and thus fail to fall within the confines of § 5–416. While this argument has the appeal of simplicity, the Court believes that it is too simple.

▇ While the contract does not state specifically that arbitration is to be held in Kansas, it does provide that arbitration is to be in accordance with the Construction Industry Arbitration Rules of the AAA. As noted previously, said rules provide that the determination of the location of arbitration, when the location is in dispute, shall be made by the AAA. Thus, defendants agreed to be bound by a procedure which could result in arbitration in the state of Kansas. In the Court's view, this agreement to be bound by a process which could result in Kansas as the site of arbitration, fulfills the statutory requirement that the agreement provide "for arbitration in this state."

Diligent research by the Court has uncovered only one other case dealing with this question. In that matter the contract also provided for arbitration in accordance with the Construction Industry Arbitration Rules of the AAA, providing that the AAA shall determine the locale of arbitration. The Court ruled that the defendants were thus bound by the AAA's decision as to locale, which in turn conferred jurisdiction under the provisions of the Uniform Arbitration Act on the trial court to enter judgment on the arbitration award. *Stancioff v. Hertz,* 406 N.E.2d 1318 (Mass.App.1980).

Policy grounds lead the Court to the same conclusion. The purpose of the Uniform Arbitration Act would be severely compromised if defendants' interpretation of § 5–416 was accepted. In essence, agreements to be bound by the Construction Industry Arbitration Rules would be meaningless, as none of the twenty-five states which have adopted the Uniform Arbitration Act could compel or enforce arbitration, as the contracts would not specify the particular state. Defendants' argument that § 5–416 must be narrowly construed, lest the Kansas courts be flooded with arbitration disputes from denizens of distant and exotic locales which have no relation to Kansas, is likewise inapposite, as there would continue to be the requirement of personal jurisdiction in such cases.

For the above reasons, the Court will grant plaintiff's application as to the Artesia and Mayfield disputes. Defendants are ordered to arbitrate in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, with arbitration to commence at a time chosen by the American Arbitration Association.

The Court will deny plaintiff's motion to compel arbitration of the Las Vegas dispute, as there was no agreement to arbitrate in the Las Vegas contract, nor conduct by defendants from which acquiescence could be implied.