(858 P.2d 1228)

Nos. 68,468
68,808

VERNON BARNETT and MILDRED BARNETT, *Plaintiffs-Appellees*, v. JAMES E. OLIVER and MOLLY J. OLIVER, *Defendants,* and MATTHEW H. HAMILL and ERMA J. HAMILL, *Defendants-Appellants*.

Opinion filed August 20, 1993.

*Gregory M. Dennis*, of Perry & Hamill, of Overland Park, for appellants.

*Douglas C. Spencer*, of Spencer & Spencer, P.A., of Oakley, for appellees.

Before LARSON, P.J., ROYSE, J., and HERBERT W. WALTON, District Judge Retired, assigned.

LARSON, J: This case involves two consolidated appeals in an action to foreclose a land installment sales contract.

On October 29, 1985, Vernon and Mildred Barnett contracted to sell a lot and improvements in Colby, Kansas, to Matthew and Erma Hamill and James and Molly Oliver. The Olivers subsequently have been discharged in bankruptcy and are not parties to these appeals. All further references to the buyers will be made only to the Hamills.

The purchase price was $65,000. The Hamills paid a $1,000 earnest money deposit and an additional down payment of $5,500, leaving a balance due of $58,500. The remaining balance together with interest at the rate of 10% per annum was financed by the Barnetts. The Hamills were to pay monthly installments in the amount of $531.59 for 120 months, then a balloon payment of $49,999.95 on or before November 1, 1995.

The installment contract included the following provision, known as a forfeiture clause:

"12. In the event Purchasers fail to comply with any of the terms of this contract, time being specifically made of the essence hereof, then this contract shall, at the option of Seller, become immediately null and void, and all rights of Purchasers hereunder shall then end, and all moneys paid and improvements made hereunder shall then be retained by Seller as rent and as liquidated damages for said non-performance, and Seller shall be entitled to immediate possession of said real estate, and all parties shall then be released of all further liability hereunder. If Seller does not exercise this option to terminate this contract, then Seller may require specific performance of this contract, and also exercise any other legal rights and remedies available to Seller under the laws of Kansas."

The deed was delivered to an escrow agent, who was to receive the payments under the contract and deliver the deed to the Hamills upon their full performance.

Between November of 1985 and March of 1991, the Hamills made 64 installment payments of $531.59 each. On April 7, 1991, the Hamills told the Barnetts of their intent to terminate the contract and return the property effective May 1, 1991.

The Hamills made no further payments, and in July of 1991 the Barnetts filed an action to foreclose the contract. The Barnetts

requested an in personam judgment against the Hamills in the amount of $54,791.98 plus interest.

The Hamills counterclaimed for damages, alleging that at the time of sale the Barnetts had misrepresented the condition of a roof on the building located on the property. The Hamills argued that the term "improvements" used in the following contract disclaimer clause did not include the building situated on the real estate and did not operate to preclude their misrepresentation claim:

"It is agreed and understood that this contract is for the sale of said real estate and all permanent improvements and fixtures contained therein in their present existing condition. Seller makes no representation or warranty as to the condition of said improvements or fixtures contained therein. Purchasers acknowledge that they have inspected said improvements and fixtures and agree to purchase the same in their present existing condition."

The Hamills further contended that because the Barnetts had elected to foreclose, the Hamills were entitled to a setoff for all monies paid under the contract and for the value of improvements they made to the property. They also claimed the contract did not provide for an acceleration of the entire indebtedness, limiting the judgment to only the installments not paid by the time of trial.

The court ruled at pretrial that the term "improvements" in the disclaimer clause included the building located on the real estate, barring the Hamills' misrepresentation claim.

Following trial, the trial court ordered an in personam judgment against the Hamills for $54,791.98 plus interest and an in rem judgment against the property. The trial court ordered the installment contract foreclosed as an equitable mortgage and ordered the property sold unless the judgment was paid within 10 days. The trial court's order provided for a six-month period in which the Hamills could redeem the property by paying the amount of the judgment, interest, and other expenses.

The property was subsequently sold at a foreclosure sale to the Barnetts, who bid $24,000. The Hamills objected to confirmation of the sale, contending that because the parties had stipulated prior to trial that the property was worth at least $30,000, the Barnetts' bid was inadequate.

The trial court examined the sale proceedings, found the sale was made for adequate consideration, determined the sale conformed to law in all respects, and confirmed the sale.

The Hamills timely appeal from the judgment foreclosing the contract and from the confirmation of the sale. They contend (1) the trial court erred by entering an in personam judgment against them for the entire balance due under the contract; (2) they were entitled to a setoff for payments of purchase money made under the contract and for the cost of improvements they made to the premises; (3) the term "improvements" in the disclaimer clause of the contract did not include a building located on the real estate; and (4) the trial court erred by confirming the sheriff's sale upon the bid of $24,000 by the Barnetts when the parties had previously stipulated the property was worth at least $30,000. We affirm.

*Did the trial court err by entering an in personam judgment against the Hamills for the entire balance due under the contract?*

The Barnetts rely on *Nelson v. Robinson*, 184 Kan. 340, 336 P.2d 415 (1959), as support for the trial court's decision to enter an in personam judgment against the Hamills for the entire balance due under the contract in the absence of an acceleration clause. The Barnetts argue the trial court properly exercised its equity powers, that time was of the essence of the contract as was the situation in *Nelson*, and complete relief could not be rendered in this case unless the indebtedness was accelerated.

The Hamills argue that in the absence of a clear and certain acceleration clause, the trial court had no authority to accelerate the balance due under the contract. The Hamills contend reliance upon *Nelson v. Robinson* is erroneous, arguing that nowhere in that opinion is there a statement that a debt can be accelerated in the absence of an acceleration clause; *Nelson* was a forfeiture case while this is a foreclosure action; the forfeiture option in this situation provided that the parties would be released of all further liability upon termination of the contract, a term which was not present in the contract at issue in *Nelson*; and in *Nelson* only an in rem judgment was entered against the debtors and not an in personam judgment as occurred here. The Hamills further contend that the trial court was without power to grant

equitable relief because the contract provided the Barnetts with a choice between forfeiture or other *legal* rights and remedies in the event the Hamills failed to comply with the contract terms.

The Hamills rely on several cases from other jurisdictions in support of their contention that in the absence of an express provision in the contract, the trial court could not accelerate the balance due. However, only four of those cases involve land installment sales contracts. The remaining cases involve mortgages, deeds of trust, a bill of sale for personal property, and a marriage dissolution decree. The Hamills contend it makes no difference whether the situation involves a mortgage or installment land sales contract; a trial court cannot rewrite the parties' contract by accelerating the balance due in the absence of an express contractual provision allowing such action.

The parties agree the land installment sales contract herein contained no acceleration clause.

An acceleration clause is defined as:

"A provision or clause in a mortgage, note, bond, deed of trust, or other credit agreement, which allows a lender the opportunity to call monies due under the instrument. Such clause operates when there has been a default such as nonpayment of principal, interest, or failure to pay insurance premiums." Black's Law Dictionary 12 (5th ed. 1979).

The general rule is that when a mortgage is foreclosed, the mortgagee is entitled to foreclose for the whole sum only if the mortgage contains an acceleration clause. 3 Powell on Real Property ¶ 463[3], p. 37-291 (1993). Kansas follows this general rule. See, *e.g.*, *Carpenter v. Riley*, 234 Kan. 758, 764, 675 P.2d 900 (1984); *Farmers & Merchants Bank v. Copple*, 190 Kan. 170, 174, 373 P.2d 219 (1962). Without an acceleration provision in the mortgage, the right to foreclose is limited to the partial default that has actually occurred. 3 Powell on Real Property ¶ 463[4], p. 37-297.

Nearly all states, however, find material differences exist between a mortgage and an installment land sales contract. 7 Powell on Real Property ¶ 938.20[2], p. 84D-5 (1993).

"When the purchaser has defaulted [on a land installment sales contract], the vendor has a right to be made whole—to be placed in the position that he would have been in had the purchaser fully performed. The question that courts regularly face is how to structure remedial relief most easily and

justly to make the vendor whole, given the positions of the parties at the time of default." 7 Powell on Real Property ¶ 938.22[1], p. 84D-35.

If the purchaser defaults, the vendor may foreclose the contract under the foreclosure laws of the state. 3 Powell on Real Property ¶ 450[1][b][v], p. 37-148. See *Stevens v. McDowell*, 151 Kan. 316, 98 P.2d 410 (1940); *Mustard v. Sugar Valley Lakes*, 7 Kan. App. 2d 340, 642 P.2d 111 (1981), *rev. denied* 230 Kan. 818 (1982). In this case, the contract contained a provision that time was of the essence, or a punctuality of payment provision, and the Barnetts could seek foreclosure immediately after the Hamills defaulted in their payments under the contract. See *Dallam v. Hedrick*, 16 Kan. App. 2d 258, 259, 826 P.2d 511 (1990); 7 Powell on Real Property ¶ 938.22[5], p. 84D-50; 8A Thompson on Real Property § 4474, p. 423 (1963).

The vendor who forecloses is in a position to obtain a deficiency judgment from the purchaser, unless the state has deficiency judgment limitations. 3 Powell on Real Property ¶ 450[1][c], p. 37-149. See 7 Powell on Real Property ¶ 938.22[3]]c], p. 84D-45.

Powell has this to say about an acceleration clause:

"A vendor faces greater difficulty if the contract fails to contain a clause allowing the vendor to accelerate the unpaid debt upon a default. In nearly all states, a vendor who declares a forfeiture must give the purchaser a reasonable time to cure the problem before the default can take effect. During this time, the vendor normally wants to receive the full contract price, and is unwilling to accept merely the overdue installments with the contract then reinstated. To do this, the vendor needs a right to accelerate the unpaid installments so that the entire amount is due and payable upon default. In the absence of such a clause, the purchaser can reinstate the contract by paying simply the missed installments. In the event the purchaser does not reinstate, however, the vendor can still sue for the entire unpaid amount, even without an acceleration clause. Under the doctrine of anticipatory repudiation, the vendor need not wait for a future payment to become due if the purchaser has clearly indicated an intent not to perform in the future. In the installment land contract context, courts seem to apply this doctrine with little hesitation. Thus, the absence of an acceleration clause hinders the vendor only by allowing the purchaser to reinstate the contract before the forfeiture actually takes place." 7 Powell on Real Property ¶ 938.22[5], pp. 84D-52 to 84D-53 (1993). See 7 Powell on Real Property ¶ 938.24[5], pp. 84D-111 to 84D-112 (1993).

In 4 Corbin on Contracts § 964, pp. 869-71 (1951), the following is found:

"In the case of a bilateral contract for the sale of goods or land, or for the rendition of service, an anticipatory repudiation by the buyer or employer not only makes tender of performance by the seller or employee unnecessary, but also enables him to maintain action at once. The fact that it is a duty to pay money in the future that the defendant has repudiated does not prevent his repudiation from being an anticipatory breach, for which an action lies at once. The measure of damages in such a case is the amount promised, less the saving to the plaintiff in not having to perform his part. If the money is being collected in advance of the due date, it should be properly discounted; this has been given due consideration in a number of cases."

Research has revealed, however, that other jurisdictions are split on whether a trial court, in proceedings to terminate an installment land sales contract, may accelerate the balance due in the absence of an acceleration clause. States in which a trial court may use its equitable powers to accelerate the balance due include Ohio, Washington, and Wisconsin. *Keene v. Schnetz*, 13 Ohio App. 3d 87, 468 N.E.2d 125 (1983); *Ryker v. Stidham*, 17 Wash. App. 83, 561 P.2d 1103 (1977); *Milbrandt v. Huber*, 149 Wis. 2d 275, 440 N.W.2d 807 (1989).

States in which the presence of an acceleration clause is a prerequisite to acceleration of the entire balance due under a land installment sales contract include Michigan, Montana, and New York. *Brown v. Mudge*, 242 Mich. 324, 218 N.W. 687 (1928); *Rader v. Taylor*, 134 Mont. 419, 333 P.2d 480 (1958); *Gadway v. Schachenmayr*, 78 Misc. 2d 572, 357 N.Y.S.2d 665 (1974). See 77 Am. Jur. 2d, Vendors and Purchasers § 421.

In Kansas, an action to foreclose a land installment sales contract is an equitable proceeding. 2 Moreau, Volz & Thomas, Kansas Practice Methods § 1256 (1957 and 1977 Supp.); Note, *Vendor and Purchaser—Remedies of Vendor—Foreclosure of Installment Purchase Contact*, 9 Kan. L. Rev. 353 (1961).

Although equitable foreclosure may not be a remedy expressly provided for in the land installment sales contract, it is a well-established remedy available under Kansas law. *Rosson v. Cutshall*, 11 Kan. App. 2d 267, 271, 719 P.2d 23 (1986). The failure of the contract in this case to provide for the remedy of equitable

foreclosure or equitable remedies does not preclude the Barnetts from bringing a foreclosure action nor bar the trial court's application of its equitable powers.

The rule is well recognized in our courts that "[e]quity will give whatever relief the facts warrant. The distinguishing feature of equity jurisdiction is that it possesses full power to apply settled rules to unusual conditions and to mold its decree so as to do equity between the parties." *National Reserve Life Ins. Co. v. Hand*, 190 Kan. 180, Syl. ¶ 2, 373 P.2d 194 (1962).

" '[A]s a general rule, equity will administer such relief as the nature, rights, facts, and exigencies of the case demand at the close of the trial or at the time of the making of the decree.' " *Baker v. Tucker*, 227 Kan. 86, 91, 605 P.2d 114 (1980).

In DiGiovanni, *Alternate Methods of Financing the Sale and Purchase of Single Family Residences: Representing the Buyer and the Seller*, 50 J.K.B.A. 179, 197 (1981), the following is stated regarding an action to cancel a land installment sales contract:

"Depending upon the equities, there is a broad range of potential resolutions to the suit. The court may (i) strictly enforce the contract in accordance with its terms, upholding the forfeiture of the buyer's equity in the premises, (ii) find that a default has occurred, but give the buyer a deadline by which he can pay off the balance of the purchase price and succeed to fee title, (iii) find that the forfeiture is inequitable and compel the seller to return a portion or all of the purchase price previously paid, (iv) find that the contract is really a mortgage, and require the seller to institute foreclosure proceedings, or (v) deny the forfeiture and reinstate the contract."

See Hines, *Forfeiture of Installment Land Contracts*, 12 Kan. L. Rev. 475 (1964).

*Nelson v. Robinson*, 184 Kan. 340, 336 P.2d 415 (1959), has been cited as an excellent example of the inherent equity powers trial courts possess when adjusting the relationship between vendors and purchasers in land installment sales contract cases. 2 Moreau, Volz & Thomas, Kansas Practice Methods § 1256 (1977 Supp.). See Hines, 12 Kan. L. Rev. at 486.

In *Nelson*, suit was brought to cancel an installment contract for the purchase of land in Thomas County, Kansas. Nelson had contracted to sell land to Robinson for $48,000 with a $2,000 down payment, $8,000 payment in four months, and the balance paid in regular installments. Time was made of the essence, and

if Robinson defaulted on any contract term, Nelson had the right to declare the contract forfeited and retain all payments that had been made.

Robinson defaulted after paying $18,644.85 of the purchase price. Rather than declare a forfeiture, the trial court treated the installment land sales contract as an equitable mortgage, accelerated the payments, foreclosed the contract without a sale, and prescribed a flexible period of redemption.

On appeal it was asserted that the trial court had no power in law or equity to render the judgment it did because its action resulted in making a new contract between the parties. Our Supreme Court rejected this argument, stating:

"In taking this position defendants either overlook or ignore numerous decisions of this court holding (1) that it is a well-settled principle of equity jurisprudence that where a court of equity has obtained jurisdiction of a controversy on any ground it will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject matter [citations omitted]; (2) that a trial court, sitting as a court of equity, is not obliged to render the specific decree prayed for, but may render a decree in accord with its own good judgment or discretion as to what justice demands, in view of the facts pleaded and evidence adduced [citations omitted]; and (3) that in a suit in equity where a court has before it all the property involved, all the parties claiming rights thereto and their respective claims, it should complete the determination of their respective rights and make an appropriate decree so as to avoid future litigation, as far as possible [citations omitted]." 184 Kan. at 344-45.

In this case, the Hamills have not shown that the trial court abused its discretion by applying its equity powers to accelerate the balance due under the contract and enter an in personam judgment against them. This situation is similar to the circumstances confronting the Michigan Court of Appeals in *Carpenter v. Smith*, 147 Mich. App. 560, 383 N.W.2d 248 (1985), *lv to appeal denied* 425 Mich. 873 (1986), and the holding in that case supports the trial court's decision to accelerate the balance due here.

In *Carpenter*, Lang sold real estate to the Smiths by installment contract. Lang also sold the building located on the premises to the Smiths, accepting a promissory note. After the sale, the building was burned in a fire. The insurance proceeds were split between Lang and the Smiths. The proceeds Lang received were

credited against the balance due on the promissory note. The note was cancelled and the remaining balance was added to the balance due under the land contract. The Smiths agreed to monthly payments of $800 on the land installment sales contract and agreed to reconstruct the building.

The Smiths subsequently made no payments on the land contract and no repairs to the building and failed to pay the property taxes as required by the contract. Lang brought suit against the Smiths for foreclosure and a deficiency judgment. Before trial, the Smiths stipulated they had no intention of fulfilling any of their obligations under the land installment sales contract after the fire. 147 Mich. App. at 563.

Although the land installment sales contract contained no acceleration clause, the trial court accelerated the remaining payments after applying the doctrine of anticipatory breach, entered a judgment of foreclosure, ordered the property sold, and entered a deficiency judgment against the Smiths following the sale. 147 Mich. App. at 564.

On appeal, the Smiths argued the trial court erred by accelerating the payments in the absence of an acceleration clause. The general rule in Michigan is that a trial court lacks authority " 'to decree the entire amount due in the absence of an acceleration clause in the contract.' " 147 Mich. App. at 564.

The Michigan Court of Appeals rejected the Smiths' argument, found the Smiths' conduct showed they had no intention to perform their contractual obligations, and concluded the trial court properly applied the doctrine of anticipatory repudiation to accelerate the balance due. 147 Mich. App. at 565. The court stated:

" '[W]here there has been an anticipatory breach of a contract by one party . . . the other party may treat the entire contract as broken and may sue immediately for the breach.' [Citation omitted.] An unqualified refusal to perform enables the other party to sue immediately for future payments. [Citations omitted.] 'In ascertaining whether an anticipatory breach of a contract has been committed by a party, it is the intention manifested by his acts and words which controls, and not his secret intention.' [Citation omitted.]" 147 Mich. App. at 564-65.

Our appellate courts likewise follow the doctrine of anticipatory repudiation:

" 'Where a party bound by an executory contract repudiates his obligation before the time for performance, the promisee has, according to the great weight of authority, an option to treat the contract as ended so far as further performance is concerned, and to maintain an action at once for the damages occasioned by such anticipatory breach. The rule is the same whether the contract is wholly executory or has been partially executed.' " *Wilson v. National Refining Co.*, 126 Kan. 139, 141, 266 Pac. 941 (1928).

The general rule is that if one party to a contract declares in advance that it will not perform at the time set for performance the other party may bring an immediate action for total breach of the contract. *Commonwealth Edison Co. v. Decker Coal Co.*, 612 F. Supp. 978, 981 (N.D. Ill. 1985). See Restatement (Second) of Contracts § 250, § 253 and Comment a, § 347 and Comment a (1979).

The rule applies to bilateral executory contracts, such as the contract herein. *Cornett v. Roth*, 233 Kan. 936, Syl. ¶ 5, 666 P.2d 1182 (1983); *Upham v. Shattuck*, 151 Kan. 966, 968, 101 P.2d 901 (1940).

In this case, on April 12, 1991, the Hamills' attorney sent a letter to the Barnetts confirming a conversation in which the Hamills told the Barnetts that they were terminating the installment sales contract effective May 1, 1991. The Hamills made no payments under the installment contract after March 11, 1991. Fifty-six installment payments of $531.59 each plus a balloon payment of $49,999.95 remained to be paid.

The Hamills anticipatorily breached the installment sales contract by telling the Barnetts they would no longer perform their contract obligations. Under the circumstances, we hold the trial court did not abuse its discretion by applying its equitable powers and entering a judgment requiring the Hamills to fulfill their contractual obligations and pay the Barnetts the entire balance due. "While the law abhors forfeitures, it does not abhor the fulfilling of contracts voluntarily made in which parties have bound themselves to perform certain definite requirements." *Hinshaw v. Smith*, 131 Kan. 351, Syl. ¶ 3, 291 Pac. 774 (1930). The Barnetts were entitled to the amount promised them under the contract. The alternative to the trial court's judgment, which we believe flies in the face of judicial economy, would be to require

the Barnetts to repeatedly sue the Hamills as each installment payment and the balloon payment are in default.

*Were the Hamills entitled to a setoff for payments of purchase money made under the contract and for the cost of improvements they made to the premises?*

The Hamills contend that because the Barnetts elected to foreclose the contract, the Hamills are entitled to a setoff for payments of purchase money made under the contract and for the cost of improvements they made to the premises.

Based on the purchase price of the property, the Hamills had an equity in the property slightly in excess of $10,000. Based on the approximate value of the property, the equity appears to have been a negative $25,000 to $30,000.

The authorities are clear that if a foreclosure sale produces an amount less than the amount of the secured obligation plus costs and expenses, the mortgagee, in the absence of contrary legislation, is entitled to a deficiency judgment against the mortgagor, which is the difference between the sale price and the total amount of the obligation, costs, and expenses. 55 Am. Jur. 2d, Mortgages § 905; Nelson & Whitman, Real Estate Finance Law § 8.1, p. 595 (2d ed. 1985); 3 Powell on Real Property ¶ 467, pp. 37-322 to 37-323. See *Olathe Bank v. Mann*, 252 Kan. 351, 845 P.2d 639 (1993); *Schuler v. Fowler*, 63 Kan. 98, 64 Pac. 1035 (1901); *Federal Land Bank of Wichita v. Cummings*, 12 Kan. App. 2d 134, 735 P.2d 1110 (1987).

An owner of the equity of redemption may recover the residual value of the equity in the property only when a foreclosure sale results in a surplus. 3 Powell on Real Property § 467, p. 37-320. Under the facts of this case it is clear that no surplus exists.

We see no reason not to extend these rules to land installment sales contracts terminated by equitable foreclosure. The Hamills are not entitled to set off principal payments made under the contract—in other words, their equity in the property—from the judgment against them. The Hamills received all of the rent or other benefits from ownership of the property during the time they made the payments they now seek to recover.

A careful review of the record reveals that no evidence of the cost of improvements made by the Hamills was presented to the

trial court. While arguing pretrial motions, the Hamills' counsel stated he thought the figure was $20,000 or $21,000, but nothing further was done to support the Hamills' claim. This point has not been adequately preserved for appeal. See *Diversified Financial Planners, Inc. v. Maderak*, 248 Kan. 946, 948, 811 P.2d 1237 (1991).

In any event, "[o]rdinarily a purchaser in default on his contract cannot maintain an action to recover the value of improvements placed on the land while he was in possession." *Washington v. Claassen*, 218 Kan. 577, 581, 545 P.2d 387 (1976). Further, a purchaser is entitled to be reimbursed for improvements only if the value of the property is enhanced. 218 Kan. at 581.

In this case the Hamills defaulted on the contract and the value of the property was not increased by the improvements they made. We have found no authority to support the Hamills' contention that a foreclosure proceeding entitled them to a credit for the cost of the improvements. The Hamills are not entitled to a setoff for the cost of improvements they made to the property.

*Does the term "improvements" in the disclaimer clause include the building situated on the real estate?*

The Hamills contend the term "improvements" used in the contract's disclaimer clause did not include the building situated on the real estate. Our resolution of this issue will affect the validity of their misrepresentation counterclaim against the Barnetts.

"The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court." *Akandas, Inc. v. Klippel*, 250 Kan. 458, Syl. ¶ 1, 827 P.2d 37 (1992).

"In considering a contract which is unambiguous and whose language is not doubtful or obscure, words used therein are to be given their plain, general and common meaning, and a contract of this character is to be enforced according to its terms." *Darby v. Keeran*, 211 Kan. 133, Syl. ¶ 2, 505 P.2d 710 (1973).

In *Magrath v. Mechanics & Traders Insurance Company*, 249 F.2d 98, 102 (10th Cir. 1957), the court stated:

"An 'improvement' on real property has been defined variously as 'that by which the value of anything is increased, its excellence enhanced, or the

like,' or 'an amelioration of the condition of property [effected] by the expenditure of labor or money, for the purpose of rendering it useful for other purposes than those for which it was originally used, or more useful for the same purposes.' . . . A building . . . is normally considered to be . . . an improvement upon the land of its situs."

See Black's Law Dictionary 682 (5th ed. 1979).

We conclude the term "improvements" in the disclaimer clause of this unambiguous contract includes the building located on the property.

*Did the trial court err by confirming the sale upon the Barnetts' bid of $24,000 when they had previously stipulated that the real estate was worth at least $30,000?*

On April 9, 1992, the parties stipulated that the "current fair market value of the subject real estate . . . is at least . . . $30,000." At the sale held September 8, 1992, the Barnetts were the successful purchasers with a bid of $24,000. No minimum bid, or upset price, had been established by the trial court. The Hamills unsuccessfully contested confirmation of the sale, contending the bid was inadequate.

The Hamills contend on appeal that the trial court erred by not holding the Barnetts to their stipulation that the real estate was worth at least $30,000 and request that this court order the trial court to credit them $6,000.

When determining whether the trial court erred by confirming the sale, the standard of review is abuse of discretion. *Olathe Bank v. Mann*, 17 Kan. App. 2d 112, 115, 834 P.2d 1365, *aff'd* 252 Kan. 351 (1993); K.S.A. 1992 Supp. 60-2415.

Recently, in *Olathe Bank v. Mann*, 252 Kan. at 362-63, our Supreme Court stated: "[T]he price paid for property at foreclosure should reflect the intrinsic value of the property, 'taking into consideration all the circumstances affecting the underlying worth of the property at the time of the sale.' "

A trial court may exercise its discretion to refuse to confirm a sale if it finds the bid is substantially inadequate. *Federal Land Bank of Wichita*, 12 Kan. App. 2d 134, Syl. ¶ 3. However, "mere inadequacy of the foreclosure sale price will not invalidate a sale, absent fraud, unfairness or other irregularity." Nelson & Whitman, Real Estate Finance Law § 7.21, p. 540.

"[I]nadequacy of the sale price is an insufficient ground unless it is so gross as to shock the conscience of the court, warranting an inference of fraud or imposition." Nelson & Whitman, Real Estate Finance Law § 7.21, p. 540. See also 2 Moreau, Volz & Thomas, Kansas Practice Methods § 1253 (1957) ("gross inadequacy of price is ground for denying a confirmation"); 3 Powell on Real Property ¶ 466, p. 37-317 ("There must be such inadequacy as shocks the conscience of the court, or a low price produced by the stifling of competition, chilling of bidding, or other facts showing that the sale was not made under fair conditions."); 10 Thompson on Real Property § 5170, p. 177 (1957) ("Confirmation will not be set aside on appeal unless the bid is so low as to produce a clear conviction of unconscionableness.").

The burden of proof to show the sale should be set aside is on the complaining party. 10 Thompson on Real Property § 5170, p. 183.

We find the Hamills have not met their burden to show the trial court erred by confirming a sale of the property that took place five months after the stipulation as to "current fair market value." No transcript of the confirmation hearing has been included in the record on appeal. No facts have been set forth by the Hamills which shock the conscience or show fraud or other irregularity in the sale. None of the circumstances affecting the underlying worth of the property *at the time of the sale* have been presented to this court. Further, the land installment sales contract required the Hamills to pay all property taxes subsequent to the year 1984. The Hamills failed to do so, and after the Barnetts purchased the property at the foreclosure sale, the Barnetts paid delinquent real estate taxes in the amount of $4,133.60. We hold the trial court did not abuse its discretion in confirming a sale of the property based upon the Barnetts' bid of $24,000.

Affirmed.