No. 33,686

T. H. VAUGHN, Administratrix With the Will Annexed of the Estate of William Shick, Deceased, *Appellee*, v. GUIDO KAUER and MARY KAUER, *Appellants*.

(75 P. 2d 228)

Opinion filed January 29, 1938.

*D. W. Eaton,* of Wichita, for the appellants.

*P. D. Gardiner* and *J. R. Mayall,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action to cancel a contract for the sale of real property because of defaults in payments. The trial court made findings of fact and conclusions of law and rendered judgment for plaintiff. Defendants have appealed.

On June 15, 1928, William Shick, then the owner of certain real property in Wichita, on which a greenhouse was situated, and defendants entered into a contract in writing by which Shick agreed to sell the property to defendants for $7,000, of which $1,000 was paid in cash and the balance to be paid, at times stated, in $500 payments, with interest on deferred payments. Defendants were to pay the taxes. There were provisions for forfeiture of the contract for nonpayment, with a grace period of six months if made necessary by sickness. Under their agreement this contract and a deed for the property, executed by Shick, were placed in escrow in a bank at Wichita, where the payments were to be made. The deed was to be delivered to defendants when the full amount, with interest, was paid. Defendants made payments aggregating $3,000 by 1930 on the principal sum to be paid, and interest to July, 1931. Since then no payments have been made on principal or interest.

After this contract was executed Mr. Shick, an elderly man, spent most of his time in California, but retained Wichita as his home and visited defendants there for short periods, perhaps each year. Their personal relations were friendly. Each was experienced in conducting a greenhouse. Defendants rented from Mr. Shick a residence owned by him and situated near the greenhouse, but no controversy over that is involved in this action.

William Shick died September 3, 1935, leaving a will, which was duly probated, and plaintiff was duly appointed and qualified as administratrix of his estate with the will annexed. She brought this action July 28, 1936, alleging the pertinent facts above stated; that the payments to have been made on the contract were in default and taxes for certain years unpaid, and asked to have the contract forfeited. The answer admitted the execution of the contract and the payments alleged to have been made, claimed credit for some additional payments, and alleged that about 1932 William Shick waived further payments and forgave the balance due because of the reduced value of the property and impairment of the greenhouse business resulting from the financial and business depression, and by a cross petition defendants sought to have the deed still in escrow delivered to them. These allegations of defendants were denied in a reply and in an answer to the cross petition. In addition to facts contained in the pleadings the court made this finding:

"The property was sold during the high prices of property. In 1932-'33 properties were at a low ebb because of the depression. In either the summer of 1932 or 1933, the time being somewhat uncertain under the evidence, Shick had conversations with the defendants and also with a workman at the greenhouse, in which he told the defendants to go ahead and make improvements upon the property and not to make payments to him upon the principal and interest on the contract. His conversation, in substance, was that he would take care of them on the contract; that they had paid as much as the property was worth, and for them to go ahead and improve the property. From that time until his death he made no further demands upon them for payment. Mr. Kauer wrote from time to time, telling of the difficulty of making money in the greenhouse business, and stating, in substance, that he would be able sometime to pay on the agreement.

"Mr. and Mrs. Kauer put improvements upon the greenhouse property, including the rebuilding of one section, benches, pumps, pipes, etc., amounting to, in all, the sum of $1,500 over a period of approximately three years.

"At no time did Mr. Shick, in writing, release the defendants from the contract nor did he authorize the bank to release the deed and contract in escrow to the defendants, and no demand has ever been made upon the bank by the defendants for the deed and contract."

Also, the court made the following conclusions of law:

"1. The transactions between the deceased and the defendants did not amount to a cancellation or release of the contract or a gift of the property.

"2. The plaintiff is entitled to judgment canceling and terminating the contract and for possession of the property, but because of payments and improvements made on the property pursuant to conversation with the defendants [they] should in equity be allowed six (6) months' possession of the property and that amount of time in which to make up the back payments due under the contract, together with interest, insurance and taxes and the costs of this action, and if they fail to do so then the plaintiff should at such time have immediate possession."

Defendants' exceptions to the findings made, request for additional findings, and motion for a new trial were overruled.

Without really taking exceptions to the court's findings on the ground they were not sustained by the evidence, appellants argue the evidence showed that a new contract was made in 1932 or 1933 which took the place of the original one, hence that no action could be maintained on the original contract. We find no support in the record for that view. We think the finding quoted is fully as favorable to appellants as the evidence warrants. There was correspondence between the parties. While it is true these letters do not show that Shick "dunned" defendants for payments after 1933, they do not show the payments had been forgiven, or a new contract had been made; and defendants' letters to Shick repeatedly spoke of the writers' desire and efforts to make further payments on the original contract in the near future. They said nothing about payments having been forgiven, or a new contract having been made.

Appellants contend that upon the facts found by the court, the conclusions of law and judgment should have been in their favor. They point to the words in the finding, "At no time did Mr. Shick, in writing, release the defendants from the contract." They argue that it was not essential for the release of the contract to be in writing, citing 13 C. J. 588 and cases from other states, to the effect that an executory contract may be discharged at any time before performance by a new contract, with the effect of altering the terms of the original contract, or rescinding it altogether. We are unable to see how the rules stated in these authorities have much bearing here. There was no finding a new contract had been made; neither would the evidence abstracted have supported such a finding; neither did the court rule that the release of defendants from their obligation on the contract had to be made in writing in order to be valid; hence,

we do not have the correctness of such a ruling before us. All the court was doing by the use of the language last quoted was making a finding that defendants were not released of their obligations under the contract by any writing executed by Shick. No contention is made that this finding is inaccurate.

The court did find that Shick told defendants, in substance, that he would take care of them on the contract. That is quite different from a finding that Shick told defendants he would release them from further payments on the contract. No finding of that kind was made. Shick did take care of them to the extent that he did not ask for payments for more than four years after the last payment had been made, during which time defendant, Guido Kauer, was writing him about circumstances and conditions and his hope and desire to make payments on the contract at an early date.

We note when the court's final judgment was rendered, February 19, 1937, defendants were given an additional six months' time in which to make payments, and at the argument we were told that time had been extended two months.

We see nothing wrong with the court's decision, nor any reason for defendants to say they have not been dealt with equitably.

The judgment of the court below is affirmed.