(642 P.2d 111)
No. 52,593[1]

JOHN V. MUSTARD and DARLENE F. MUSTARD, *Appellees*, v. SUGAR VALLEY LAKES, A Kansas Limited Partnership, and SUGAR VALLEY DEVELOPMENT COMPANY, INC., A Kansas Corporation, *Appellants.*

Opinion filed November 25, 1981.

*James L. Wisler,* of Mound City, and *Michael R. McAdam,* of Overland Park, for the appellants.

*Bruce W. Pitzer,* of Merriam, for the appellees.

Before JUSTICE HERD, presiding, SWINEHART, J., and LEWIS L. MCLAUGHLIN, District Judge Retired, assigned.

MCLAUGHLIN, J.: This is an appeal by defendants Sugar Valley Lakes and Sugar Valley Development Company, Inc., from the judgment of the District Court of Linn County in favor of plaintiffs John V. and Darlene F. Mustard.

The Mustards brought this action against defendants for cancellation of an installment contract for deed and deprivation of the Mustards' equitable interest in the land without judicial foreclosure.

On July 28, 1973, the Mustards executed a contract for deed with defendants to purchase Lot 21, Plat 3, Sugar Valley Lakes Subdivision, a recreational development in Linn County, for $3,400. Under the terms of the contract, the Mustards paid $340 down, with the balance to be paid in eighty-four monthly installments of $51.72, including interest at 10.58 percent. The contract included a provision allowing Sugar Valley to terminate the contract thirty days after a written demand to cure a default, to

---

[1] Reporter's Note: On February 24, 1982, by order of the Kansas Supreme Court pursuant to Rule 7.04 (228 Kan. li), this case was changed from an unpublished memorandum opinion to a published opinion.

retain all payments made as liquidated damages and rent for use of the property, and to recover possession.

Beginning in December, 1976, the Mustards disputed the amount due on their contract, alleging misapplication of payments. On January 28, 1977, Sugar Valley sent a letter notifying the Mustards that they had sixty days to bring their delinquent account current. This notice stated it complied with the Kansas Uniform Land Sales Practices Act, K.S.A. 58-3301 *et seq.*, notice requirements. A certified letter sent March 18, 1977, informed them unless $355.98 was paid within fourteen days, the grace period would expire April 1, 1977. The Mustards' check dated March 31, 1977, for $355.98 was returned for insufficient funds twice before Sugar Valley sent a letter April 20, 1977, advising them the contract was cancelled. Sugar Valley indicated the contract was not actually cancelled on their records until June 23, 1977. A letter dated June 28, 1977, stated the $206.88 in payments recently received would be returned and reminded the Mustards the contract was cancelled.

On September 30, 1977, Sugar Valley resold the plaintiffs' lot to an employee of the Sugar Valley Lakes Homeowners Association for $1,800 and two trailer park lots in trade. The certificate of value card listed $3,776.67 as the consideration for the lot.

Plaintiffs filed suit September 5, 1978, alleging defendants' cancellation of the contract deprived them of their equitable interest in land without benefit of judicial foreclosure, numerous unconscionable acts under the Kansas Consumer Protection Act, conversion of the land and payments, and fraud. The petition also sought an accounting of the application of plaintiffs' payments. A second amended petition alleged violations of the Kansas Uniform Land Sales Practices Act, K.S.A. 58-3301 *et seq.* Following a pretrial election of remedies, the Kansas Consumer Protection Act violation allegations were dropped. After a second pretrial conference, the trial court ruled plaintiffs had been entitled to equitable foreclosure as a matter of law. The trial court also ruled that the Kansas Uniform Land Sales Practices Act was enacted after the contract was effective and had no retroactive application. The trial court's memorandum opinion limited the trial to the issue of damages for failure to judicially foreclose plaintiffs' equitable interest. After hearing the evidence, the trial court found plaintiffs entitled to damages equal to the fair market value of the lot

on the date of cancellation, less the principal balance outstanding following various adjustments for misapplied payments.

Sugar Valley appealed the trial court's ruling that plaintiffs had been entitled to equitable foreclosure as a matter of law and also challenged the measure of damages. At oral arguments, Sugar Valley abandoned the issue of equitable foreclosure, leaving only the issue of damages for review.

In formulating the damages, the trial court found the resale of the lot was not an arm's length transaction and was therefore not representative of the fair market value of the lot. Based on other testimony regarding adjacent or comparable lot sales, the trial court set a fair market value of $6,000. Neither the fair market value nor the calculation of the outstanding balance of the contract by crediting various disputed payments and applying the Rule of 78's have been challenged on appeal.

Sugar Valley considers the measure of damages applied to be inequitable under the facts of this case. The relief formulated by the trial court by using the difference between the fair market value of the lot at cancellation and the principal balance outstanding on the contract as the measure of damages returns to plaintiffs their principal payments of $1,651.34 and gives them the appreciated value of $2,600. Defendants retain approximately $900 in interest for the period of plaintiffs' possession and the lot. Sugar Valley contends the Mustards are not entitled to the appreciated value.

Since Sugar Valley has conceded that the Mustards were entitled to foreclosure a brief survey of judicial relief granted to holders of equitable interests is instructive.

In *Steele v. Burrows,* 118 Kan. 90, 233 Pac. 1027 (1925), the court gave the purchaser sixty days to pay all principal and interest due ($899.80) or forfeit the $1,025 paid on the $1,775 purchase price. The purchaser had been in default over three years and the payments to be forfeited were not found to exceed rental value. A longer extension of time was considered inequitable to the vendor.

The court, in *Buskirk v. Hein,* 138 Kan. 337, 26 P.2d 263 (1933), found the forfeiture of $1,104.22 paid on the $10,000 contract to purchase a quarter section of land was not inequitable since the fair rental value was $1,200 for the time the purchasers were in possession. The trial court gave them a brief redemption period held sufficient on appeal.

The purchasers of a greenhouse for $7,000 in 1928 in *Vaughn v. Kauer,* 147 Kan. 189, 75 P.2d 228 (1938), made payments of $3,000 and constructed improvements worth $1,500 after ceasing payments in 1931. A suit to cancel the contract was brought in 1936 and the purchasers were given six months to redeem the property, plus an additional two-month extension prior to foreclosure.

The court required the vendor to accept money tendered during an extension of time for payment in *National Land Co. v. Perry,* 23 Kan. 140 (1879). The purchaser was given the land which had increased in value as a direct result of his labor.

The common element of the relief granted was an allowance of additional time for the purchaser to tender full performance, thereby retaining the accumulated equity in the land and any appreciation in value. In the present case, this relief was not available, since the lot had been resold nearly a year before judicial intervention was sought. The trial court's measure of damages gave plaintiffs the cash equivalent of their interest in the land.

The present case differs from the factual situations of *Vaughn v. Kauer* and *National Land Co. v. Perry* since the purchasers were not responsible for the appreciation in value of the lot through any of their own efforts. When the Mustards contracted to purchase their lot, the only improvement that had been made to the wooded pasture and crop land was a bulldozed road. Prior to cancellation of the contract, Sugar Valley had completed a development of paved roads, a $100,000 golf course, a $400,000 dam and a lake. The Mustards' lot had become lakefront property as promised. The increased value due to Sugar Valley's expenditures had, however, been fully anticipated as a part of the original bargain.

Another factor distinguishing the present case is that the Mustards had not yet built a vacation home on their lot so that there was no rental value to the lot. The only value at the time of cancellation of the contract was as a speculative investment. Considering the Mustards' attempts to tender payments after cancellation and Sugar Valley's concessions, we find that the relief giving the Mustards the benefit of their bargain is equitable.

Affirmed.