(826 P.2d 511)
No. 64,332

JOHN P. DALLAM III, *Appellee*, v. LANCE D. HEDRICK and NANCY E. HEDRICK, *Appellants*.

—

Opinion filed July 27, 1990.

*Paul Hasty, Jr.*, and *Ben T. Schmitt*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellants.

*John P. Dallam III*, appellee pro se.

Before ELLIOTT, P.J., REES, J., and DANIEL L. BREWSTER, District Judge, assigned.

REES, J.: Defendants Lance D. Hedrick and Nancy E. Hedrick appeal from a conditional order of enforcement of an installment land contract forfeiture clause. The Hedricks defaulted by ceasing to make payments. We affirm.

The contract with which this litigation is concerned is a contract for deed entered into by and between plaintiff John P. Dallam III, as seller, and the Hedricks, as buyers, on December 12, 1986. These are the now pertinent provisions of the contract:

"[F]or the consideration hereinafter specified, the seller hereby sells, and agrees to convey to [the] buyer, the following described land . . . [7435 Woodson, Overland Park, Kansas].

"IN CONSIDERATION WHEREOF, [the] buyer hereby promises to pay the seller [$57,400] as follows:

[$4,000] in hand and [$53,400] as follows: [1] $42.85 on the 1st day of January, 1987, and $42.85 on the 1st day of each succeeding month thereafter with interest at the rate of 11 percent per annum, with the remaining unpaid balance, if any, due in full on or before December 1, 1992, or until the principal amount of $4,500.00 has been paid in full, *and* [2] $467.56 on the

1st day of January, 1987, and $467.56 on the 1st day of each succeeding month thereafter. Said amount [$467.56] is the principal and interest payment on the 1st mortgage held by Rothschild Financial. [The $467.56 payment] shall be due until the above first mentioned $4,500.00 has been paid in full. At that time, buyer shall assume said first mortgage [held by Rothschild]. . . . The buyer [is] to have possession of said real estate from this time.

"On full payment of the sums of *money and interest* aforesaid, . . . the seller shall convey said land to the . . . buyer by [warranty] deed . . . .
. . . .

"It *is* expressly understood and agreed that Time Is the Essence of This Contract and that if the buyer shall fail to pay any installment, [or] interest . . . for a period of 11 days after said payment shall become due and payable, then the amount theretofore paid by the buyer shall . . . be forfeited to the seller as liquidated damages for breach of this contract, and on such default, it will be lawful and proper for the seller, . . . without notice, to take possession of said premises . . . ." (Emphasis added.)

The contract plainly entitles the Hedricks, the buyers, to the possession and occupancy of the subject residence as of the date of the contract and thereafter throughout the period for satisfaction of the $57,400 purchase price. However, within the contract are a punctuality of payment ("time is of the essence") provision and a forfeiture clause.

The Hedricks timely made 24 monthly payments of $510.41 ($42.85 + $467.56 = $510.41) from and after the execution of the contract. They made no payments thereafter. Their last payment was made as of December 1, 1988. They vacated the premises as of March 17, 1989. On June 20, 1989, the trial court ordered enforcement of the contract forfeiture clause but granted to the Hedricks the right to avoid that outcome if they would bring their payments current by July 31, 1989, a date 41 days after the trial court decision, 136 days after they vacated the premises, and some seven months after they defaulted upon failing to make payments as of January 1, 1989. The order made was of the sort approved in *Vaughn v. Kauer*, 147 Kan. 189, 75 P.2d 228 (1938).

Under the contract, the purchase price principal is to be paid by payment of (1) $4,000 upon execution of the contract, (2) $4,500 through monthly payments of $42.85 each to Dallam, and (3) $48,900 first through monthly payments of $467.56 each to Dallam until the $4,500 is paid and then through payment of

$467.56 each month pursuant to their assumption of Rothschild's first mortgage. The contract provision concerning the $4,500 to be paid to Dallam contemplates 72 monthly payments (January 1, 1987, through December 1, 1992) subject to possible prepayment(s).

The contract effectively provides that the Hedricks are to pay 11% interest incident to their payments in satisfaction of the $4,500 element of their payment obligation and interest at an unspecified rate incident to their payments in performance of the $48,900 element of their payment obligation.

We find it to be beyond sincere dispute that each monthly payment of $42.85 and $467.56 is to be first applied to the payment of interest then due with the balance of the payment to be applied to reduction of the unpaid principal balance. To illustrate, the first $42.85 payment would be applied to interest payment of $41.25 ($1/12 \times 11\% \times \$4,500 = \$41.25$) with $1.60 ($42.85 − $41.25 = $1.60) applied to reduction of principal, leaving an unpaid principal balance of $4,498.40 ($4,500 − $1.60 = $4,498.40). The second $42.85 payment would be applied to interest payment of $41.24 ($1/12 \times 11\% \times \$4,498.40 = \$41.24$) with $1.61 ($42.85 − $41.24 = $1.61) applied to reduction of principal, leaving an unpaid principal balance of $4,496.79 ($4,498.40 − $1.61 = $4,496.79). Our calculations reveal that, upon the Hedricks' twenty-fourth monthly $42.85 payment (January 1, 1987, through December 1, 1988), they had paid interest in the total amount of $985.67 and $42.73 toward reduction of principal, leaving a then unpaid principal balance of $4,457.27. Assuming there had been continued regular payments through December 1, 1992, (72 months) and no prepaid payment(s) of principal, the then unpaid principal balance would be $4,337.85 after total payment of $2,923.05 in interest and an aggregate reduction of principal in the amount of $162.15. A total sum of $3,085.20 (72 × $42.85 = $3,085.20 and $2,923.05 + $162.15 = $3,085.20) would then have been expended by the Hedricks in making the $42.85 payments. According to the contract, as of December 1, 1992, the last monthly $42.85 payment and the $4,337.85 unpaid principal balance would both then be due and owing and, upon their payment, the Hedricks' performance of the $4,500 element of their purchase price obligation would be completed.

As to the first mortgage held by Rothschild, neither the terms thereof nor the applicable rate of interest is revealed by the contract or elsewhere in the record on appeal. (For some presently unexplained reason, neither party has seen to it that any hearing transcript is included in the record on appeal.) Nonetheless, by his brief Dallam has represented to us that the interest rate is 11%. Inasmuch as the Hedricks have not challenged that representation by way of a reply brief or otherwise, we take the representation to be correct. Thus, upon using the same arithmetic calculations as previously described in regard to the $4,500 element of the purchase price obligation of the Hedricks, we find that upon 24 months' timely payments of $467.56, or a total expenditure of $11,221.44 (24 × $467.56 = $11,221.44) by the Hedricks, interest in the aggregate sum of $10,705.70 was paid and $515.74 in the aggregate was paid toward satisfaction of the $48,900 element of the purchase price obligation leaving $48,384.26 in unpaid principal. Had there been timely monthly payments of $467.56 for 72 months, $33,664.32 (72 × $467.56 = $33,664.32) would have been expended by the buyer with interest in the total sum of $31,707.37 having been paid and the aggregate sum of $1,956.95 having been paid toward satisfaction of the $48,900 element of the purchase price obligation, leaving $46,943.05 ($48,900 − $1,956.95 = $46,943.05) in unpaid principal.

After the Hendricks had made their 24 payments of $510.41 ($42.85 + $467.56 = $510.41), *the aggregate payment* by them *toward satisfaction of the $57,400 purchase price* was $4,558.47 ($4,000 + $42.73 + $515.74 = $4,558.47) or *7.9% of the purchase price.* To treat the Hedricks' total expenditure of $16,249.84 ($4,000 + $1,028.40 + $11,221.44 = $16,249.84) as the aggregate fractional part of the purchase price paid simply is incorrect factually. Otherwise put, it was incorrect for the Hedricks to represent and the trial court to consider that the Hedricks had paid 28% ($16,249.84 ÷ $57,400 = 28.3%) of the purchase price when they defaulted.

Fifty years ago, our Supreme Court had this to say in *Stevens v. McDowell,* 151 Kan. 316, 319-20, 98 P.2d 410 (1940):

"The bench and bar of this state have long been familiar with a form of real-estate contract between two parties, whom for convenience we will name as the owner-vendor and the tenant-vendee, in which the former names a price at which he will sell the property and names a specified amount to be paid monthly, and in which he agrees to let the latter into

possession upon condition that if the monthly payments are made until their aggregate sum amounts to the specified purchase price the property shall be .conveyed to the latter; but if the tenant-vendee fails in his monthly payments then . . . he shall have no interest in the property . . . . If the down payment by the tenant-vendee has been negligible, and his monthly payments have been but few or have only been paid irregularly, to the manifest loss of the owner-vendor, the contract will ordinarily be enforced according to its terms. [Citations omitted.]

"But if the monthly payments have been made with reasonable promptness and have been made for such a length of time that their aggregate amount constitutes the equivalent of a substantial payment of the purchase price . . . then equity may not permit the interest of the tenant-vendee to be summarily extinguished . . . but will deal with the situation according to equitable principles, and may require proceedings as in equitable foreclosure before the interest of the latter can be extinguished. Cases illustrating various· aspects of this doctrine run through all our reports. [Citations· omitted.]

"The logical deduction from the doctrine stated above is that where the periodical payments by the tenant-vendee in their aggregate amount to a substantial part of the purchase price he . .· . acquires . . . an equitable interest in the property . . . ."

In the comprehensive Kansas Law Review article on the subject of forfeiture of installment land contracts, Hines, *Forfeiture of Installment Land Contracts*, 12 Kan. L. Rev. 475, 485 (1964), this is found:

"If the down payment by the vendee has been negligible, and his periodic payments have been .but few or have only been paid irregularly, to the manifest loss of the vendor, the contract will ordinarily be enforced according to its terms. On the other hand if the monthly payments have been made for such a length of time that their aggregate amount constitutes the equivalent of a substantial payment on the purchase price, or where substantial payment on the purchase price . . . [has] been made by the vendee, then equity may not permit the interest of the vendee to be summarily extinguished, but will deal with the situation according to equitable principles. Proceedings as in equitable foreclosure may be required before the vendee's interest is extinguished."

The dispositive issue for our resolution on this appeal is whether the trial court abused its discretion in concluding that the Hedricks had not made "substantial payment on the purchase price" which would have precluded forfeiture. With no hesitance, we find that the trial court did not abuse its discretion in concluding

the Hedricks had not made "substantial payment" and, therefore, did not commit reversible error.

As demonstrated, the proportion of the purchase price paid here was only some 8%. We have been referred to and know of no cases rejecting forfeiture where the proportion of the purchase price paid was so little. For example, see cases cited at 12 Kan. L. Rev. at 485 n.52.

No reversible error occurred stemming from the trial court's mistaken consideration of 28% as the proportion of the purchase price paid by the Hedricks.

The Hedricks assert that "where the residence in question is transferred pursuant to a contract for deed, the defendants are entitled to an equitable foreclosure." They rely on *Mustard v. Sugar Valley Lakes*, 7 Kan. App. 2d 340, 642 P.2d 111 (1981), *rev. denied* 230 Kan. 818 (1982), as their authority for that assertion. Their reliance is misplaced. Although *Mustard's* Syl. ¶ 1 states that "[a] purchaser of land under an installment contract for deed is entitled to equitable foreclosure," no more than a cursory reading of that opinion is required to discern that it simply does not support the unqualified proposition expressed in the syllabus statement.

"[S]tatements in a judicial opinion or syllabus thereof must be read and interpreted in light of the issue involved and the facts giving rise to what is said." *Hartman v. Nordquist*, 8 Kan. App. 2d 213, 214, 653 P.2d 1199 (1982). "What is said in an opinion or the syllabus thereof always is to be read and interpreted in the light of the facts and questions present in the case. [Citations omitted.] Otherwise, language meaningful for one case may erroneously become dogma for other cases despite essential differences. [Citation omitted.]" *State v. Reed*, 8 Kan. App. 2d 615, 623-24, 663 P.2d 680, *rev. denied* 234 Kan. 1077 (1983) (Rees, J., dissenting and concurring). See *McKinney, Administrator v. Miller*, 204 Kan. 436, 437, 464 P.2d 276 (1970).

The Hedricks complain that they were granted too short a "redemption period." They assert they should have been allowed time on the order of 60 days following June 20, 1989. Of course, that argument simply suggests that a statutory period for redemption from foreclosure sale should have been allowed here. Statutory redemption periods are inapplicable to cases such as

the one before us. "It is well settled that the statutory redemption period has no place in the enforcement of land contracts unless the vendor seeks to foreclose his lien by sale." 12 Kan. L. Rev. at 486.

The trial court did not err.

Affirmed.