(204 P.3d 642)
No. 98,989

LARRI L. LEWIS and TERESA LEWIS, *Appellants*, v. R & K RANCH, L.L.C.; DENNIS R. ROEMER, INDIVIDUALLY; KEVIN ZERR and KEITH ZERR, d/b/a K & K FARMS, A PARTNERSHIP, *Appellees.*

Opinion filed April 3, 2009.

*Charles T. Engel* and *Jason E. Geier*, of Engel & Geier, P.A., of Topeka, for appellants.

*Donald F. Hoffman*, of Dreiling, Bieker & Hoffman, L.L.P., of Hays, for appellees.

Before CAPLINGER, P.J., MALONE and LEBEN, JJ.

LEBEN, J.: This dispute over farm ground arrives at our court on appeal in an unusual procedural state—the trial was abbreviated when the district court granted judgment on a key issue in favor of the defendants after only the plaintiffs had presented evidence. On appeal, both sides have cited an incorrect legal standard that suggests we must view the evidence in the light most favorable to the plaintiffs because the trial wasn't finished. But K.S.A. 60-252(c) allows the district court to make factual findings against a party once that party has been fully heard on an issue, and the plaintiffs had fully presented their case before the district court ruled against them. Accordingly, we review the case on appeal to determine whether the district court's factual findings were supported by substantial evidence and whether those findings supported the district court's legal rulings. See *Lyons v. Holder*, 38 Kan. App. 2d 131, 135, 163 P.3d 343 (2007).

The plaintiffs, Larri and Teresa Lewis, agreed to buy 316.64 acres of farm ground from R & K Ranch; the Lewises agreed to pay $90,000 in installments of $9,000 due each year. But the district court concluded—contrary to the testimony of Larri Lewis—that the Lewises never made even a partial payment. Because the contract allowed R & K Ranch to declare the contract null and void if the Lewises failed to make any scheduled payment on time, R & K Ranch was well within its rights under the contract to declare that contract void for nonpayment, as the district court concluded. Under the proper standard as set forth in K.S.A. 60-252(c) and *Lyons*, we affirm the district court's judgment because its findings were supported by the evidence and were sufficient to support its legal rulings.

## Factual Background

In 2001, the Lewises signed a 5-year lease with R & K Ranch for about 1,100 acres. Under that lease, the Lewises paid $9,525 twice per year, on May 1 and October 1, for use of the land.

In 2004, R & K Ranch offered the Lewises the chance to buy part of the leased ground. The parties reached an oral agreement, and eventually they entered into a written contract for the Lewises to buy 316.64 acres. At the same time, a new lease was prepared since the acreage under lease was reduced because of the purchase arrangement.

The real-estate contract, signed in June 2004, called for the Lewises to make 10 annual installments of $9,000, "with the first annual payment due on the 10th day of June 2004 and each annual installment due on the 1st day of June of each year thereafter until paid in full." The contract contained two other provisions of note: a forfeiture clause and a buy-back provision. Under the forfeiture clause, if the Lewises failed to "keep, observe and perform any of the covenants" made by them, including payment, R & K Ranch had the option to "declare the contract null and void." Under the buy-back provision, R & K Ranch had "the option at any time until the completion of the contract to purchase back the above described real estate at the amount equal to the amount PURCHASER has paid on the contract to that date . . . ."

The new lease agreement, also signed in June 2004, was for a 12-year term. The lease called for the Lewises to make lease payments of $7,275 twice each year, except that the first payment would be $5,025 due October 1, 2004.

Rent was due under the 2001 ground lease in May 2004, before the contract for purchase of part of the leased ground was signed in June. The Lewises paid $9,525 on May 1, 2004, which was the amount of their preexisting rental obligation. That payment was $2,250 more than the rent agreed upon in the June 2004 lease for future annual lease payments for the remaining ground, but the new lease's first payment due in October was $2,250 less than the annual lease payment due in later years ($7,275 − $2,250 = $5,025).

There was some time delay in getting an escrow account set up to receive the Lewises' $9,000 payment on the land purchase due June 10, 2004. In addition, a check of title to the land showed that the First National Bank of Quinter, Kansas, had a mortgage interest. So the parties entered into an addendum to the purchase con-

tract providing that the Lewises' payments be made jointly to R & K Ranch and First National Bank of Quinter. The Lewises signed the addendum on August 14, 2004.

But the Lewises never made the initial payment for $9,000, as required by the contract. In fact, the district court concluded that the Lewises never made *any* payment toward the land purchase.

In September 2004, Dennis Roemer, a principal with R & K Ranch, sought a new buyer. R & K Ranch then entered into a sales contract with K & K Farms for the same acreage that the Lewises had agreed to buy. Because the Lewises had made no payment toward the purchase, the district court concluded that R & K Ranch was entitled to proceed to void the sale to the Lewises and sell the land to another party. The district court noted that R & K Ranch was not required to make any payment to the Lewises because the Lewises had not made any payment toward the purchase. Thus, the contract's buy-back provision allowed R & K Ranch to take the property back without making any payment to the Lewises.

## Procedural Background

Before moving on to the legal issues on appeal, we must address a procedural issue. After the Lewises rested at trial, the defendants R & K Ranch and Roemer as its general manager moved for what they called a directed verdict. Before the 1997 amendments to the Kansas Rules of Civil Procedure, a motion for directed verdict was made under K.S.A. 60-250 when a party had finished its presentation in a jury trial. Now the motion is called one for judgment as a matter of law, and it's still available under K.S.A. 60-250(a) in a jury trial. When made, the motion may be granted when the evidence—taken in the light most favorable to the nonmoving party—leaves no basis for a verdict in favor of that party. See *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 40, 169 P.3d 1052 (2007). Many lawyers still refer to such motions as ones for a directed verdict, even though K.S.A. 60-250 has referred to them as ones for judgment as a matter of law since 1997. See L. 1997, ch. 173, sec. 26.

But whatever that motion may be called, it applies under K.S.A. 60-250 *only* in jury trials. This case was tried to the district judge,

not a jury, so K.S.A. 60-252(c) applies, not K.S.A. 60-250. Under K.S.A. 60-252(c), once a party has had a full opportunity to present its evidence, "the court may enter judgment as a matter of law against that party with respect to a claim . . . that cannot under the controlling law be maintained . . . without a favorable finding on that issue." When considering a motion for judgment as a matter of law in a judge-tried case, "the district judge has the power to weigh and evaluate the evidence in the same manner as if he or she were adjudicating the case on the merits and making findings of fact at the conclusion of the entire case." *Lyons*, 38 Kan. App. 2d at 135. Accord 9C Wright & Miller, Federal Practice & Procedure: Civil 3d § 2573.1 (2008).

When the attorney for R & K Ranch and Roemer made his "directed verdict" motion, he cited the standard applicable to the old directed-verdict motion in a jury trial: that the judge must grant all inferences in favor of the nonmoving party. No one suggested any other standard, and the district court said it had reviewed the evidence in the light most favorable to the Lewises. Even under that more favorable standard for the Lewises, the district court found their evidence insufficient to support their claim.

On appeal, however, we must apply the law correctly: "It is the substance of the motion that controls, not the form." *Jackson v. State*, 1 Kan. App. 2d 744, 745-46, 573 P.2d 637 (1977) *rev. denied* 225 Kan. 844 (1978) (citing *Ten Eyck v. Harp*, 197 Kan. 529, 533, 419 P.2d 922 [1966]). Under K.S.A. 60-252(c), which applies here, the district court was free to make credibility determinations and to weigh the evidence. To the extent that it believed itself bound by a more stringent rule, that belief would favor the Lewises, not R & K Ranch or Roemer. On appellate review, we look to see whether the district court's findings are supported by substantial evidence and whether those findings are sufficient to support its legal ruling. *Lyons*, 38 Kan. App. 2d at 135.

With those standards in mind, we turn to the issues that the Lewises raised on appeal. First, they argue that the district court should not have granted judgment as a matter of law that R & K Ranch had properly declared the real-estate contract null and void. Second, they argue that the district court should not have granted

judgment as a matter of law quieting title to the 316-acre tract to K & K Farms, the second party R & K Ranch sold it to. Third, they argue that the district court should not have awarded $4,500 that the Lewises had paid into court to R & K Ranch. We will address each issue separately, but none of them are difficult given the appropriate standard of review, which allowed the district court to judge credibility and to determine disputed facts.

I. *The District Court Did Not Err in Concluding that R & K Ranch Lawfully Declared the Sales Contract to the Lewises Null and Void for Nonpayment.*

The district court made several factual findings that are important to its decision that R & K Ranch properly declared the sales contract to the Lewises null and void for nonpayment. Most important among those is the finding that R & K Ranch "had not received any payment," full or partial, toward the purchase from the Lewises. The Lewises contest this on appeal, noting the testimony of Larri Lewis that $2,250 of the payment made in May 2005 was intended to go toward the ground purchase. But the Lewises have argued the wrong standard of review on appeal, and the district court was not required to accept Larri Lewis' testimony if other testimony led the court to a different conclusion. The district court specifically noted that the Lewises received full credit for that $2,250 by reducing the lease payment due October 1, 2004. The district court also noted that the real-estate contract had no provision suggesting the possibility of a partial payment, which is an especially significant omission since the parties drafted and signed that contract *after* the May 2005 lease payment from which Larri Lewis testified that $2,250 was intended to go toward the land purchase.

As we have already noted, we must accept the district court's factual findings if substantial evidence supports them. The district court's finding that no payments toward the land purchase were made by the Lewises meets that test.

So if no payments were made, was R & K Ranch then entitled to cancel the contract? Yes. The contract's forfeiture clause made that explicit: If the Lewises failed to "keep, observe and perform

any of the covenants" made by them, including payment, R & K Ranch had the option to "declare the contract null and void." The district court also found that R & K Ranch did declare the contract void.

In addition to the forfeiture provision, we have noted that the contract contained a buy-back provision that allowed R & K Ranch to buy back the ground merely by reimbursing the Lewises for any payments made. The district court also found this provision gave R & K Ranch the authority to take the property back without payment to the Lewises in September 2004: "Under the terms of the contract the sellers were permitted to do so and had no requirement to reimburse the Lewis[es] because no payment to that date had been made in September of 2004. That is exactly what happened when R & K Ranch sold the property to K & K Farms."

In sum, the district court found as a factual matter that the Lewises never made any payment toward the ground purchase. The Lewises' failure to meet their payment obligations gave R & K Ranch the option to declare the contract void, and the district court found that R & K Ranch did so. The Lewises' failure to meet their payment obligations also gave R & K Ranch the ability to use the buy-back provision of the contract without having to make any out-of-pocket payment to the Lewises. The district court also found that R & K Ranch properly relied upon that provision. The district court properly found that the Lewises had no further rights under the purchase contract.

## II. *The District Court Properly Quieted Title to the Disputed Real Estate to K & K Farms.*

The Lewises separately claim that K & K Farms did not obtain clear title to the disputed ground because the Lewises had gained equitable title to it. According to the Lewises, this equitable title could only be eliminated in a foreclosure lawsuit.

In support of their claim, the Lewises cite *Lumber Co. v. Arnold,* 88 Kan. 465, 129 P. 178 (1913). In that case, a party agreed to purchase real estate under an oral contract that gave the buyer the ability to take possession of the real estate and build houses on it before making any payments. After the buyer hired suppliers when

building the houses and those suppliers filed a mechanic's lien, the Kansas Supreme Court held that the buyer was estopped to deny ownership even though payment had not yet been made.

In addition to the *Lumber Co.* case, we acknowledge the general rule that in a contract-for-deed sale of real estate, a deed granting ownership to the buyer isn't recorded until all payments have been made, but the buyer has an equitable ownership interest that must be foreclosed to eliminate it. See *Graham v. Claypool*, 26 Kan. App. 2d 94, Syl. ¶ 3, 978 P.2d 298 (1999). But the Lewises read too much into the *Lumber Co.* case. They contend that under it every party who purchases real estate on a contract basis immediately becomes the equitable owner, even without payment. They argue that under it their equitable ownership remains unless a foreclosure proceeding is instituted, no matter what the terms of their purchase contract may say.

But there are also a number of important differences between the *Lumber Co.* case and our case. In *Lumber Co.*, the buyer had no preexisting right of possession to the real estate, and the contract expressly provided that the buyer could take possession and build houses on the ground before making payment. Here, of course, the Lewises were already occupying the pasture ground by lease. In addition, the evidence suggested that they retained occupancy via lease after the sale to K & K Farms; the base amount that the Lewises actually paid after the sale to K & K Farms changed to a total payment of $9,525 twice yearly, the same rental they had paid for the full leased acreage before contracting to buy part of the ground. In addition to these factual distinctions, the legal setting of the *Lumber Co.* case is far different than our case as well: it involved whether a party was an owner for the purpose of allowing another to file a mechanic's lien against the property. The Kansas Supreme Court later noted that just because a party was considered an equitable owner for the purpose of filing a mechanic's lien, the factual scenario in *Lumber Co.*, did not mean that the party was actually the owner of the real estate. *Kennedy v. Atchison*, 162 Kan. 694, 698-99, 178 P.2d 987 (1947).

The district court in our case noted that the purchase contract between the Lewises and R & K Ranch didn't provide any provision

for the Lewises to have equitable title and that the Lewises made no "substantial contribution" either to the title or to payment on the purchase price.

In these circumstances, we conclude that a foreclosure suit was not required to eliminate the possibility of an equitable title interest by the Lewises. The Lewises signed the purchase contract with the forfeiture and buy-back provisions that we have already noted, and the Lewises made no payment toward the purchase. The Lewises already occupied the land under lease before signing the purchase contract, and the Lewises effectively paid rent in exchange for their continued possession of the property. The district court did not err in granting judgment as a matter of law quieting title to the disputed farm ground to K & K Farms.

III. *The District Court Did Not Err in Awarding the Money Paid into Court to R & K Ranch.*

The last issue involves what to do with $4,500 that the Lewises paid into court while the lawsuit was pending. The parties agree— and so do we—that the district court's decision on this issue should be reviewed for abuse of discretion, which means that we should uphold that decision unless no reasonable person would agree with it. See *In re Estate of Lane*, 39 Kan. App. 2d 1062, 1070, 188 P.3d 23 (2008).

The Lewises made two payments into court in the amount of $9,525. But the 2004 ground lease didn't cover the purchased ground and called for a payment of only $7,275. Thus, an extra $2,250 was included in each payment, for a total of $4,500.

The Lewises contended that these represented additional partial payments toward the land purchase, but we have already affirmed the district court's conclusion that R & K Ranch properly declared that contract void and sold the ground to K & K Farms before these payments were made. In the event we affirmed the district court's judgment on that issue, the Lewises argue on appeal that the money should be refunded to the Lewises.

In support of this argument, the Lewises note that the district court upheld the sale of the ground to K & K Farms in 2004. Because the payments were made after that date, the Lewises ar-

gue that they should not go to R & K Ranch, which no longer owned the property.

The district court found that as a matter of equity, the Lewises had occupied the disputed ground pending resolution of the lawsuit and that they should have to pay something in rent. The court found that it was equitable to order the $4,500 charged as rent and paid out to R & K Ranch. The court separately found that the 2004 lease to the nondisputed ground remained in effect, a ruling not appealed to us.

The Lewises chose to pay the sum of $9,525 into court, even though the 2004 lease called for a payment of only $7,275. The Lewises also chose to continue occupancy of the disputed ground. The district court heard testimony that indicated K & K Farms had tried to place cattle on that ground in 2006, but the Lewises turned those cattle out. When the Lewises paid the money now at issue into the court while occupying ground no longer covered under a written lease, those actions gave the court equitable power to determine how to allocate those sums. The court was well within its equitable authority to order that the money be treated as rent.

The Lewises' separate argument that the money shouldn't be paid to R & K Ranch, since it no longer owned the property, might have merit if it were supported by K & K Farms. But K & K Farms told the district court to pay the money out to R & K Ranch. The Lewises occupied the disputed ground and do not claim that the $4,500 was an unfair rental rate for the time they occupied it. To whom the money should be paid is a matter between R & K Ranch and K & K Farms. Since K & K Farms told the court to disburse the funds to R & K Ranch, the district court did not err in making that its order.

The judgment of the district court is affirmed.