NOT DESIGNATED FOR PUBLICATION

No. 126,853

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FELIPE M. HERRERA and MARIA DE JESUS URENA,
*Appellants*,

v.

JOHN W. KOEHN, MARLENE KOEHN,
MIGUEL A. SALTO, and BLANCO E. SALTO,
*Appellees*.

MEMORANDUM OPINION

Appeal from Gray District Court; LAURA H. LEWIS, judge. Submitted without oral argument. Opinion filed November 21, 2025. Affirmed.

*Terry J. Malone*, of Williams-Malone, P.A., of Dodge City, for appellants.

*Michael Giardine*, of Curtis E. Campbell, Chrtd., of Cimarron, for appellees.

Before ISHERWOOD, P.J., BRUNS and GARDNER, JJ.

ISHERWOOD, J.: Felipe M. Herrera and Maria De Jesus Urena (Buyers) appeal the district court's denial of their request to set aside an eviction. They contend that the property agreement at issue contemplated they would purchase, not rent the home and, therefore, foreclosure was the appropriate remedy. Following a careful review of the record, we are satisfied the district court properly construed the parties' contract as a rental agreement and affirm its decision to quiet title to the property through an eviction order.

1

FACTUAL AND PROCEDURAL BACKGROUND

In June 2008, the Buyers entered into a real estate purchase agreement with John Koehn. The contract price was $45,000 and required a $4,000 down payment. It required the Buyers to make monthly payments plus maintain insurance and taxes, and when all payments were made in full, the escrow agent would release the deed to the Buyers.

The contract also included an "Extended Absence" provision to prohibit the Buyers from abandoning the property. It required them to notify Koehn if they planned to be absent for more than 14 days, and their failure to do so allowed Koehn to assume they had abandoned the property.

The parties also agreed to an acceleration of payment clause, which specified that if the Buyers failed to honor their financial obligations—contract payments, insurance, or property tax—the entire contract immediately became due, and any sum they submitted after that point would be treated as a rental payment during their occupancy. An additional clause specified that if the Buyers did not complete their payments, it would constitute a default and their failure to make a payment within 30 days granted Koehn the authority to terminate the contract. Again, under this provision, if the contract terminated before completion, any money the Buyers submitted to Koehn would be classified as rental payments.

The contract also required the Buyers to maintain the property, including the yard, and pay all utilities and other services. Under its terms, the Buyers could only use the premises as a single-family residence, and they were expressly prohibited from assigning or subletting all or part of the property. Finally, until the Buyers made their final payment, they were not permitted to tear out any cabinets, fixtures, or walls without Koehn's express approval.

The Buyers paid all monthly payments of $349.69 from June 2008 through October 2016. In March 2017, Koehn moved the Gray County District Court to evict the Buyers. At the same time, Koehn sued the Buyers for past due rent and $10,000 for damage to the residence.

On March 14, 2017, the district court conducted a hearing on the matter at which all parties were present. It ultimately found that the Buyers failed to pay rent, awarded possession of the residence to Koehn, and ordered that the agreement would be deemed terminated as of March 16, 2017. A trial setting was scheduled in order to assess the appropriate amount of damages, including any outstanding rent the Buyers owed on the property. The sheriff was instructed to remove the Buyers from the premises and return possession of the residence to Koehn pursuant to a writ of possession, but the Buyers independently vacated the property before the deadline.

Before the proceeding to assess damages was conducted, Koehn moved to transfer the case to Chapter 60 and asserted the measure was necessary in order to clear title to the property. The district court granted the transfer, but Koehn then voluntarily dismissed his claims for past due rent and property damage and sold the property to another party, the Salto family.

In March 2019, the Buyers petitioned the district court for possession of the premises and establishment of an equitable interest, and a trial was eventually conducted in May 2023 to resolve the matter. During that proceeding, the Buyers admitted that they damaged the structure by removing walls and ultimately abandoned the residence, failed to pay rent or services which resulted in the termination of power and utilities to the home, and lived in California for part of the relevant period. Koehn testified that the Buyers damaged the home quite extensively by removing the kitchen sink, tearing cabinets off the walls, and taking the furnace. Herrera denied removing the furnace, but the subsequent purchaser, Miguel Salto, testified that Herrera admitted to removing the

furnace. Koehn also recounted a conversation for the court that he shared with Herrera in which Herrera told him that he no longer intended to pay rent which prompted Koehn to remind him about the contract. Herrera simply responded that he "don't need no contract." Koehn also testified that the Buyers pocketed $4,000 which was earmarked for roof repairs.

Herrera testified that he injured his back at work shortly after moving into the house and that was the last time he worked. Yet, he also admitted that he was employed while living in California between 2014 and 2016. Despite having abandoned the house, Herrera sought to recover $4,000 he allegedly incurred in moving expenses, as well as $240,000 of income he purportedly lost as a result of the eviction.

Urena confirmed that they did not make the required payments to Koehn and that they lived in California from about 2014 to 2019. Despite those acknowledgements, Urena remained steadfast in her position that she and Hererra owned the house.

Koehn testified that the house was abandoned for more than a year when he initiated eviction proceedings. Koehn stated that he hauled off three pickup loads of junk collected from the interior of the home, as well as from the front and back yards of the residence. In addition to the Buyers' breach of the maintenance provision of the contract, they also allowed Herrera's sister to live in the home for some time after they vacated, which violated the provision that prohibited assignments and subletting. Koehn confirmed that the utilities were turned off due to nonpayment and that as of the day of trial, the Buyers never attempted to pay past due rent or redeem the property for the balance of the purchase price. Koehn testified that he cooperated with the Buyers when they missed or had a late payment, but he was forced to pursue an eviction action after they missed three consecutive payments. According to Koehn, the Buyers' actions reduced the value of the house from $45,000 to $20,000.

The district court concluded there was a valid contract between the parties and sufficient evidence to support Koehn's claim that the Buyers breached multiple provisions of that contract. It also found that at the time of signing, the Buyers acquired an equitable interest in the property, but when they breached the contract, they lost their equitable interest, and it reverted from a purchase agreement to a rental agreement. The district court concluded that the Saltos were the true owners, ordered the Buyers to quiet title, and declined to find they were entitled to any damages.

The Buyers now bring their case before this court for an analysis and determination of whether the district court reached its conclusions in error.

LEGAL ANALYSIS

I. *Did the district court err in determining that eviction was the proper remedy rather than foreclosure?*

The Buyers argue that they had an equitable interest in the property, created by the installment contract for sale or contract for deed. Therefore, the proper remedy for nonpayment was foreclosure, not eviction as the district court found. Koehn counters that the district court properly determined that the Buyers' breach of several contract provisions and reduction of the fair market value of the property extinguished their equitable interest in the property. We agree that the Buyers forfeited their equitable interest in the property.

After a bench trial in this case, the district court made findings of fact and from those findings rendered its conclusion of law about equitable interest in the property. An appellate court reviews a district court's factual findings to determine whether they are supported by substantial competent evidence and sufficient to support the district court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. *Hodges v. Johnson*,

5

288 Kan. 56, 65, 199 P.3d 1251 (2009). An appellate court has unlimited review of conclusions of law. *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 915-16, 157 P.3d 1109 (2007).

An appellate court also exercises unlimited review over the interpretation and legal effect of written instruments, including whether they are ambiguous. We are not bound by the lower court's interpretations or rulings. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

"'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Russell v. Treanor Investments*, 311 Kan. 675, 680, 466 P.3d 481 (2020).

The threshold question involves analysis of the contract between the Buyers and Koehn. The contract required the Buyers to give Koehn a down payment of $4,000, followed by monthly installments until the balance of the purchase price was paid off. In Kansas, this type of purchase agreement is sometimes referred to as an installment land contract. See, e.g., *Williams v. Pinson*, No. 124,997, 2023 WL 1879428, at *6 (Kan. App. 2023) (unpublished opinion). More often, Kansas courts refer to them as a contract for deed. See, e.g., *Miller Trust v. Cox*, No. 121,190, 2020 WL 5079722, at *1 (Kan. App. 2020) (unpublished opinion).

This case captures a unique legal moment in that the appeal came just before the Kansas Contract for Deed Act, K.S.A. 2024 Supp. 58-5201 et seq., took effect on July 1, 2024. The parties signed the contract in 2008, eviction occurred in 2017, and the district court tried the Buyers' petition in 2023. Thus, the outcome here relies on the history of Kansas caselaw analyzing contracts for deed.

Early Kansas cases on contracts for deed did not establish a bright-line rule for determining what degree of performance by the buyer results in an equitable interest in the property. In *Heard v. Gephart*, 118 Kan. 82, 233 P. 1044 (1925), George Gephart entered a contract for deed to buy a home from John Heard. The contract for deed contained a default procedure where if the buyers failed to pay the monthly installments, taxes, or insurance, then they forfeited their purchase rights under the contract and the seller could repossess the property. Gephart paid $1,989.28 of the $4,000 purchase price (49.7%) before defaulting. The district court found that the money Gephart paid was a reasonable rent for the premises. On appeal, Gephart argued that the district court overlooked his equity in the property. The *Heard* court affirmed the district court's forfeiture order, noting that the contract stipulated that if the buyer defaulted, then any money paid would be considered rent and liquidated damages. 118 Kan. at 82, 84.

In *Steele v. Burrows*, 118 Kan. 90, 233 P. 1027 (1925), the buyer Della Steele paid 53% of the total contract. The purchase price of the property was $1,775, with a $600 cash down payment and an agreement that the remainder would be paid in monthly installments of $25 with 8% interest. Steele paid $1,025 on the contract, but another $899.80 remained due and owing. 118 Kan. at 91. The district court found that Burrows was entitled to a judgment on the contract and forfeiting Steele's interest in the property, yet afforded her an extension of 60 days to satisfy the balance. The reviewing court agreed that because Steele paid 53% of the total contract, forfeiture was legally appropriate and affirmed the district court's decision to grant an extension before ordering a forfeiture. 118 Kan. at 91-92.

By way of contrast, in *DeGood v. Gettle*, 119 Kan. 534, 240 P. 960 (1925), J.W. Dorsey DeGood entered a contract for deed to sell two lots, valued at $2,600, to John Cole and Clive Trent. The buyers submitted a $100 cash down payment and agreed to pay $50 each month until the balance was paid. Cole paid $2,400 of the $2,600 total before injuries that he sustained in an accident resulted in his inability to make any

further payments. The district court held that forfeiture was not appropriate and instead granted Cole a six-month grace period in which to redeem the property and obtain the deeds from DeGood.

On appeal, the *DeGood* court noted that Cole paid twelve-thirteenths of the purchase price and affirmed the district court. It found that "[t]he substantial rights of the plaintiff can be adequately protected without resort to the harsh remedy of forfeiture." 119 Kan. at 538. The court added that "[t]he enforcement of forfeiture because of the default in making a small payment would cause Cole a loss out of all proportion to the injuries sustained by the plaintiff." 119 Kan. at 538. The buyer made improvements on the property and paid 92% of the purchase price thus, forfeiture was not an appropriate remedy. 119 Kan. at 535, 538.

Our Supreme Court determined that forfeiture was an appropriate remedy in *Vaughn v. Kauer*, 147 Kan. 189, 75 P.2d 228 (1938). In that case, William Shick entered a contract for deed with Guido Kauer for $7,000, with $1,000 paid in cash up front and followed by $500 payments with interest on deferred payments. After Shick died in September 1935, T.H. Vaughn administered his estate and saw that Kauer had made no payments on either the principal or interest since July 1931. The district court found that given the fact Kauer had only paid $3,000 of the $7,000 purchase price (43%), despite the extensions and leniency he was afforded as a result of his personal financial hardships, Vaughn was entitled to cancel and terminate the contract and take possession of the property. That decision was affirmed on appeal. 147 Kan. at 189, 192.

Cases like *Heard*, *Steele*, *DeGood*, and *Vaughn* paved the way for our Supreme Court to summarize the caselaw on contracts for deed in *Stevens v. McDowell*, 151 Kan. 316, 98 P.2d 410 (1940). The *Stevens* court laid out the rule for determining equitable interest in property under a contract for deed. Specifically, if the buyer remits only a meager down payment and the monthly payments that follow are few or irregularly paid,

"to the manifest loss of the owner-vendor," then the contract's forfeiture clause is enforceable. 151 Kan. at 319. But if prompt monthly payments aggregate to a "substantial payment on the purchase price, or where substantial improvements have been made by the tenant-vendee, then equity may not permit the interest of the tenant-vendee to be summarily extinguished in forcible detainer." 151 Kan. at 319. Thus, minimal payments or performance allows forfeiture, and the owner may rightfully evict the buyer as if evicting a delinquent renter. But when there has been substantial performance on the contract for deed the owner must initiate foreclosure proceedings to recover possession of the property. See 151 Kan. at 320, 322.

In *Dallam v. Hedrick*, 16 Kan. App. 2d 258, 826 P.2d 511 (1990), this court determined that forfeiture was appropriate because the buyers failed to fulfill their obligations under a contract for deed. Lance and Nancy Hedrick contracted to buy real estate from John P. Dallam for $57,400. The Hedricks gave Dallam $4,000 as a down payment and made 24 monthly payments before they stopped paying. The district court enforced the forfeiture clause, and the Hedricks appealed. This court determined that because the Hedricks paid only a fraction of the purchase price—specifically 8%— enforcement of the forfeiture clause was appropriate. 16 Kan. App. 2d at 262-63. While the *Dallam* court held that 8% did not constitute a substantial payment it did not lend any clarity as to what percentage would meet that "substantial" threshold. 16 Kan. App. 2d at 262-63.

The absence of a sharp dividing line between forfeiture and foreclosure is apparent in *Bennett v. Galindo*, No. 94-1101-PFK, 1994 WL 613429 (D. Kan. 1994) (unpublished opinion). In that case, Harold and Karen Galindo bought a house for $46,000 from Carl and Lillian Bennett. The contract defined a default as "failure to pay six monthly installments, real estate taxes, or insurance premiums." 1994 WL 613429, at *1. If the Galindos defaulted under the contract, they forfeited all money previously paid to the Bennetts and were to surrender immediate possession of the premises to the Bennetts. In

1993, the Galindos failed to pay installments in April, May, June, September, October, November, and December. As a result, the Bennetts canceled the contract for deed and the Galindos moved out. The Galindos took the position that given their payments totaled $19,451.34, they had an equitable interest in the property. 1994 WL 613429, at *1-2.

In applying Kansas law, the *Bennett* court noted variations, with one commentator claiming no discernible pattern in cases in which the Kansas Supreme Court declared forfeiture inequitable. 1994 WL 613429, at *6 (citing Hines, *Forfeiture of Installment Land Contracts*, 12 U. Kan. L. Rev. 475, 485 [1964]). Ultimately, the *Bennett* court applied the rule from *Stevens*, which was over 50 years old at that point, to find that forfeiture was inequitable. The Galindos had paid approximately $20,000 toward the $46,000 purchase price, prompting the *Bennett* court to conclude that they had an equitable interest in the property. 1994 WL 613429, at *6, 8.

This court has previously determined that Kansas does not have a bright-line rule which states that the existence of a contract for deed creates an equitable interest. *Lewis v. R & K Ranch*, 41 Kan. App. 2d 588, 204 P.3d 642 (2009). The *Lewis* court rejected the proposition that every party who purchases real estate on a contract basis immediately becomes an equitable owner, even without payment. 41 Kan. App. 2d at 595. Similar to the Buyers in this case, Larri and Teresa Lewis argued that their equitable ownership in R & K Ranch remained unless a foreclosure proceeding was instituted, no matter what the terms of the purchase agreement might say. The *Lewis* court disagreed. The Lewises previously paid rent under a lease before entering a purchase agreement. Even though they switched from renters to buyers, they did not acquire an equitable title interest that required foreclosure just by signing the purchase agreement. Because the Lewises made no payment toward the purchase, the contract's forfeiture and buy-back provisions allowed repossession of the property without a foreclosure suit. 41 Kan. App. 2d at 596.

Ownership depends on the extent of performance on the contract for deed. Minimal performance, whether through few payments and little improvement of the property, can result in a lack of equitable interest in the property. Forfeiture clauses can therefore lead to eviction. But substantial performance on the contract for deed, such as prompt payments and improvements to the property, can earn equity for the tenant-vendee. This court has continued to apply this rule from *Stevens*. Purchasers who are making payments under a contract for deed occupy a status that is "'more than tenants,'" but something less than the "'holder of the legal title.'" See *Minium v. City of Morland*, No. 107,689, 2013 WL 517927, at *5 (Kan. App. 2013) (unpublished opinion) (quoting *Graham v. Claypool*, 26 Kan. App. 2d 94, 95-96, 978 P.2d 298 [1999], and *In re Estate of Hills*, 222 Kan. 231, 241-42, 564 P.2d 462 [1977]).

Here, the Buyers did not earn sufficient equity to prevent forfeiture. After their down payment of $4,000, $41,000 remained due and owing. The evidence admitted during the trial included the amortization schedule, which broke down the principal and interest on the $41,000 across 140 payments. The Buyers made 113 (almost 81%) of the payments. But the resale of the property provided the district court with evidence that these payments were offset by a significant drop in value. Koehn sold the property to the Saltos for $20,000. This drop of $25,000 in value erased a large portion of the equity the Buyers might have accrued in the property.

Koehn also correctly points to Herrera's anticipatory breach of contract when he said that he was "done paying rent" and "I don't need no contract." Anticipatory breaches allow the non-breaching party to sue immediately for the breach. *Barnett v. Oliver*, 18 Kan. App. 2d 672, 682-83, 858 P.2d 1228 (1993). Koehn correctly invoked the forfeiture clause, leading to eviction. Foreclosure proceedings were not necessary.

The district court properly determined that the Buyers' breaches of contract triggered the forfeiture clause and extinguished their equitable interest in the property.

Thus, the status of the Buyers was not properly tenant-vendee. Rather, the Buyers—by breaching the contract—were rendered merely tenants. See *Stevens*, 151 Kan. at 319.

II. *Did the district court have jurisdiction to order an eviction?*

The Buyers argue that the district court lacked jurisdiction to enter the eviction order because it held a trial on the same day as the first appearance. We do not find their jurisdictional deficiency argument persuasive.

On March 7, 2017, the Buyers received a summons ordering them to appear in court on March 14, 2017. Herrera was present that day, and the district court entered a judgment that awarded Koehn possession of the property and ordered the Buyers to vacate the premises by March 16, 2017. The Buyers argue that the district court erred by holding that hearing on the same date that they were summoned to appear.

The Buyers direct us to K.S.A. 2024 Supp. 61-3807 as support of their position. Subsection (a) of that provision states: "If a trial is necessary, the trial shall be conducted within 14 days after the appearance date stated in the summons." The Buyers assert that—because the district court summoned them to appear on March 14—it lacked statutory authority to hear any evidence and lacked jurisdiction to enter an order. They offer citations which define jurisdiction, but none which relate to the issue they have raised here concerning the propriety of deciding an eviction matter on the appearance date rather than scheduling a trial on a later date.

This issue was previously addressed by our court in *Deng v. Hattrup*, No. 118,164, 2018 WL 2999031 (Kan. App. 2018) (unpublished opinion). In that case, a magistrate judge granted Julia Deng's request for summary judgment on her petition to evict Scott Hattrup. The *Deng* court noted the standard of review, stating: "Because the statute provides a judge with discretion to determine *if* a trial is necessary, we review the court's

decision for an abuse of discretion." 2018 WL 2999031, at *4. The *Deng* court affirmed the magistrate judge's decision that a trial was unnecessary because the undisputed facts demanded an eviction. 2018 WL 2999031, at *4.

Here, the district court held a hearing, determined whether there were any factual disputes that required a trial on the eviction issue, and ruled on that matter. It also determined that there was a separate dispute on additional damages and set a trial date solely to resolve that issue. The district court's action complies with K.S.A. 2024 Supp. 61-3807's requirement to determine whether a trial is warranted. The district court "took the correct path in disposing of the eviction action." *Deng*, 2018 WL 2999031, at *4. Because the Buyers were tenants and the district court had jurisdiction to enter an eviction order, we affirm.

Affirmed.